HARRY E. HUNT, JR. *vs.* PERKINS MACHINERY CO., INC.

Barnstable. April 6, 1967. — May 5, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& REARDON, JJ.

*Sale,* Warranty, Contract of sale. *Words,* "Conspicuous."

A disclaimer by the seller of an engine of the implied warranties of merchantability and of fitness for a particular purpose, printed on the back
of a purchase order in a size and style of type adequate to call attention
thereto under the heading "Terms and Conditions" printed at the top of
the back of the order in bold face type capitals, was not "conspicuous"
within the definition of that word in § 1–201 (10) of the Uniform Commercial Code, G. L. c. 106, where it appeared that, although the statement "Both this order and its acceptance are subject to 'Terms and
Conditions' stated in this order" was printed in such capitals on the
front of the order, the order was on a "pad of paper containing several
copies separated by carbon paper" and the front contained other provisions in small type and did not contain any reference to the "Terms
and Conditions" as being on the back of the order; and under § 2–316(2)
the disclaimer was not effective as against a purchaser who did not read
anything on the back of the order when he signed it on the front while
it was still part of the "pad" and returned it to the seller. [540–541]

In an action of contract by a commercial fisherman against a seller of
diesel engines, evidence warranted findings that there was a breach by
the defendant of the implied warranties of merchantability under G. L.
c. 106, § 2–314, and of fitness for a particular purpose under § 2–315,
and that the defendant was liable therefor, where it appeared that the
plaintiff consulted the defendant, and, relying on his advice, purchased
from him an engine for a boat which, when running, gave off excessive
quantities of heavy black smoke, and that the defendant on several occasions and by a variety of means attempted to curtail the smoking but
was unsuccessful and the engine was removed. [541]

CONTRACT. Writ in the Superior Court dated September 27, 1961.

The action was tried before *Hudson, J.*

*William H. Gorham* for the defendant.

*George C. Decas* for the plaintiff.

CUTTER, J. Hunt, an experienced commercial fisherman,
got in touch with the defendant (Perkins), a distributor of
Caterpillar Tractor Company's products. He was consid-

ering the purchase of a diesel engine for his fishing boat. In the fall of 1960, Perkins's sales manager, one Rideout, went to Hunt's house in Orleans to acquaint him with the various Caterpillar diesel engines available. At Rideout's suggestion, Hunt went to Maine to look at a boat equipped with such an engine. In January, 1961, Hunt signed a purchase order for one Caterpillar Model D330 engine with a 1.2 to 1 reduction gear (instead of one reduction gear ordinarily supplied by the manufacturer) and certain specified accessories. The written portion of the purchase order was prepared (except for the signatures) by Rideout. It was on a "pad of paper containing several copies separated by carbon paper."

Hunt did not read anything on the back of the order when he signed it. "The original and all . . . copies of the . . . [o]rder were taken by Rideout . . . for signature by an official" of Perkins. Hunt received a fully executed copy of the order by mail a few days later.

The face of the purchase order contains a statement of the property sold, acknowledgment of a $500 deposit, a statement of the balance ($4,095) due, and certain miscellaneous information. In the center of the face of the order in bold face type capitals appears the statement "BOTH THIS ORDER AND ITS ACCEPTANCE ARE SUBJECT TO 'TERMS AND CONDITIONS' STATED IN THIS ORDER." On the reverse side of the order at the top in the same bold face type capitals appear the words "TERMS AND CONDITIONS." Underneath those words there are eleven numbered paragraphs. Included among the numbered paragraphs are those set out in the margin.[1]

---

[1] The relevant terms and conditions are the following: "1. *Acceptance.* This order is subject to acceptance by Seller only at Seller's place of business in Massachusetts and shall become a binding contract only when a copy has been accepted in writing and . . . returned to Buyer. 2. *All Agreements.* This written order when accepted by Seller shall be the . . . exclusive statement of all terms of the agreement between the parties other than such additional agreements as may be contained in any contracts, notes or other documents specified herein. No representations of any kind have been made except as set forth in this order or in the other documents specified herein. 3. WAR-

After Hunt had received his executed copy of the order, he took his boat to Plymouth Marine Railways (Marine) to have it prepared for the new engine. Seven or eight days later Hunt by telephone learned from Rideout that there would be a delay in delivery. Rideout then told Hunt that he could tear up the contract and forget the engine if he wanted to do so. Hunt decided to go through with the purchase because his boat was already at Marine and the old engine had been removed.

The engine was delivered to Marine on March 6, 1961, and was thereafter installed in the boat by Marine. This installation work included everything that was necessary to connect the engine, with the exception of the initial starting. That was done by employees of Perkins. Marine was not connected with, nor acting for, Perkins at any time. Its work was not controlled by Perkins. It was engaged by and paid by Hunt.

After the engine was installed a series of mechanical problems arose, each of which was corrected by Perkins at no expense to Hunt other than the time involved while the repairs were being made. The engine, when running, gave off excessive quantities of heavy black smoke, which caused the boat to become dirty, inside and out, and rendered Hunt's work on the boat unpleasant. This condition persisted until the removal of the engine. At Hunt's request Perkins, on several occasions and by a variety of means, attempted without success to curtail the smoking.

About July 20, 1961, the engine was removed by Hunt and put on the dock at Marine's plant. Hunt called Perkins and reported that he had removed the engine and advised Perkins to get it. The engine is still on Marine's premises.

RANTIES. SELLER MAKES NO WARRANTIES (INCLUDING . . . ANY WARRANTIES AS TO MERCHANTABILITY OR FITNESS) EITHER EXPRESS OR IMPLIED WITH RESPECT TO THE PROPERTY UNLESS ENDORSED HEREON IN WRITING. BUYER SHALL BE LIMITED TO THE WARRANTIES OF THE RESPECTIVE MANUFACTURERS OF THE PRODUCTS SOLD. . . . 6. *Limitation of Liability.* Seller shall not be liable for any property damage or for any . . . injuries . . . suffered in connection with the operation or installation of the [p]roperty. . . .''

In July, 1961, Hunt purchased a new engine from another manufacturer. This new engine has performed satisfactorily.

Hunt's evidence of damages consisted of a showing of cash payments to Marine of $761.49 for installation work and testimony that he lost $250 each day when he was prevented from fishing as a result of Perkins's work on the boat. Perkins worked on the boat on about ten different occasions between the installation of the engine and June, 1961.

The trial judge denied motions for directed verdicts in this action in two counts, count 1 for breach of an implied warranty of merchantability and count 2 for breach of an implied warranty of fitness for a particular purpose. The jury returned verdicts for $5,357. Perkins brings before us exceptions to the denial of directed verdicts and to the judge's refusal to order verdicts entered for Perkins under leave reserved. There was evidence from which the facts stated above could have been found.

1. This case presents issues under the Uniform Commercial Code (see St. 1957, c. 765, § 1) concerning excluding or modifying (a) the implied warranty of merchantability under G. L. c. 106, § 2–314,[2] and (b) the implied warranty under c. 106, § 2–315, that goods shall be fit for a particular purpose.[3] Section 2–316 (2) reads, in part: "(2) . . . [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability *and in case of a writing must be conspicuous,* and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous.* Lan-

---

[2] Section 2–314 reads: "(1) Unless excluded or modified by section 2–316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . (2) Goods to be merchantable must at least be such as . . . (c) are fit for the ordinary purposes for which such goods are used . . . ."

[3] Section 2–315 reads: "Where the seller . . . has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under . . . [§ 2–316] an implied warranty that the goods shall be fit for such purpose."

guage to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description *on the face hereof*' '' (emphasis supplied). Section 2–316 (2) must be read with § 1–201 (10) which provides, in part: '' 'Conspicuous': A term . . . is conspicuous when it is so written that a reasonable person against whom it is to operate *ought to have noticed it*. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. . . . Whether a term or clause is 'conspicuous' . . . is for decision by the court'' (emphasis supplied).

Hunt concedes that Perkins's disclaimer of warranties would have been effective if the disclaimer language in the ''Terms and Conditions'' (fn. 1), instead of being on the back of the contract form had been (a) on the face of the purchase order, or (b) had been referred to on the face of the order by words such as ''see other side'' or ''as stated on the reverse hereof.'' The first question for decision is whether the disclaimer of the warranties on the back of this purchase order was ''conspicuous.''[4]

Some light is shed upon the meaning of ''conspicuous'' in § 1–201 (10) by the official comment on the subsection, which says in part, ''This is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it.''[5] See 1957 official text, p. 26. Most commentators

---

[4] See as to the effect of a general disclaimer of implied warranties prior to the adoption of the code, *S. F. Bowser & Co. Inc.* v. *Independent Dye House, Inc.* 276 Mass. 289, 296; *Dekofski* v. *Leite,* 336 Mass. 127, 129; *Hall* v. *Everett Motors, Inc.* 340 Mass. 430, 432. For the distinction in pre-code cases between disclaimers or limitations of liability in contracts and those in small tickets or receipts, compare *Henderson* v. *Canadian Pac. Ry.* 258 Mass. 372, 376, and *D'Aloisio* v. *Morton's Inc.* 342 Mass. 231, 234–236, with *Kergald* v. *Armstrong Transfer Exp. Co.* 330 Mass. 254, 255–256.

[5] See, to similar effect, Duesenberg and King, Sales & Bulk Transfers under the Uniform Commercial Code, vol. 3, § 7.03, esp. pp. 7–33 to 7–37. After paraphrasing the official comment, the authors go on to say, ''In the case of a disclaimer of warranties, it is suggested that a contrasting size of type be used at a minimum, and, if it is at all possible, different color type should also

discuss the issue in general terms.[6]

The decided cases are not controlling.   In *Boeing Airplane Co.* v. *O'Malley,* 329 F. 2d 585, 593 (8th Cir.), a disclaimer "merely in the same color and size of type used for the other provisions" was treated as not conspicuous.   In *Minikes* v. *Admiral Corp.* 48 Misc. 2d (N. Y.) 1012, 1013 (Dist. Ct.), a "disclaimer . . . smaller, not larger, than the rest of the purchase order" was held not conspicuous.   In *Roto-Lith, Ltd.* v. *F. P. Bartlett & Co.* 297 F. 2d 497, 498–500 (1st Cir.), effect was given to a disclaimer in type "still conspicuous" on the back of the acceptance of an order, which was referred to on the front of the order in the following terms, "All goods sold without warranties, express or implied, and subject to the terms on reverse side."   See for a case disregarding a disclaimer in relatively small type on the back of a form, *Berk* v. *Gordon Johnson Co.* 232 F. Supp. 682, 686–688 (E. D. Mich.).

Under § 2–316 (2) read with the last sentence of § 1–201 (10), it is a question of law for the court whether a provision is conspicuous.   We are in as good a position to decide that issue as the trial judge, for a photographic copy of both sides of the purchase order is before us.   We decide the issue by applying the statutory test under § 1–201 (10) of what is conspicuous, viz. whether "a reasonable person against whom . . . [the disclaimer] is to operate ought to have noticed it."

In the language of the official comment (see fn. 5 and related text) the bold face printing on the front of the purchase order (although adequate in size and contrast with the rest of the printing on the form) was not in words suf-

---

be used.   When contrasting size of type is mentioned, this would mean that the language disclaiming the warranty of merchantability should be in larger size type.   The color of the type could be a darker shade of black, or perhaps a yellow or red, or some other color that would call attention to the disclaimer."   This, of course, may be merely a counsel of caution.

[6] See Cudahy, Limitation of Warranty under the Uniform Commercial Code, 47 Marquette L. Rev. 127, 137–139, 144–146; Lauer, Sales Warranties under the Uniform Commercial Code, 30 Mo. L. Rev. 259, 282–285; notes, 43 B. U. L. Rev. 396, 398–402, 38 Ind. L. J. 648, 670–675, 112 U. of Pa. L. Rev. 564, 583–589.

ficient to call attention to the language on the back of the form. That language would naturally be concealed because the forms were part of a pad of paper when Hunt signed the paper. There was no reference whatsoever on the front of the order to the ''Terms and Conditions'' as being on the back of the order, and the quoted words ''Terms and Conditions'' might have been thought to apply to other small type provisions on the front of the order unless Hunt had happened to turn over the form and look at the back of the order. His first reasonable opportunity to do this was when the executed form was returned to him.

In the opinion of a majority of the court, the provisions on the front of the purchase order did not make adequate reference to the provisions on the back of the order to draw attention to the latter. Hence the provisions on the back of the order cannot be said to be conspicuous although printed in an adequate size and style of type. The disclaimer was not effective.

2. Upon the evidence, the jury could reasonably conclude that the continued smoking of the engine was caused by a condition which constituted a breach both of the warranty of merchantability and of the warranty of fitness for a particular purpose. A smoking marine engine can hardly be regarded as of merchantable quality when sold by a distributor of such engines who is unable to cure the defect after persistent efforts. It could be found that Perkins, through Rideout, was fully aware of Hunt's requirements and his purpose in buying the engine and that Hunt relied on Perkins to guide him in its selection. See *Kurriss* v. *Conrad & Co. Inc.* 312 Mass. 670, 677–683; *Hadley* v. *Hillcrest Dairy, Inc.* 341 Mass. 624, 625–629. No evidence summarized in the bill of exceptions suggests that any injury to the engine may have been caused by Marine's work in installing it in Hunt's boat. Verdicts could not have been directed for Perkins.

*Exceptions overruled.*