*Southern District*

**ERNEST F. FLETCHER**

**v.**

**R. L. GOURLEY CO., INC.**

Argued: Apr. 29, 1969. Decided: Aug. 9, 1969.

*Present:* Nash, C.J., Owen, Murphy, JJ.

Case tried to *Cox, J.,* in the District Court of Northern Norfolk. No. 56605.

*Murphy, J.* This is an action of tort or contract in three counts commenced by writ dated December 16, 1966, with an ad damnum of $30,000.00 for damages alleged to have resulted from the sale of a faulty Raypak boiler. Count one alleged an implied warranty by the defendant to the plaintiff that the boiler would be fit for the purpose intended and that it was not fit for the purpose. Count two alleged an express warranty by the defendant to the plaintiff that if the boiler were installed in a certain described manner it would provide sufficient heat at a reasonable cost to properly heat the greenhouse building of the plaintiff; that the plaintiff installed this boiler in the manner described by the plaintiff but that the warranty was breached, to the plaintiff's damage. Count three alleged that upon the sale of the boiler the defendant undertook to prescribe the manner in which the boiler was to be installed; that it negligently prescribed a certain manner of installation as a result of which the boiler did not properly heat said buildings. The defendant filed a general denial, and further answered (1) alleging that the warranty under count one was negatived under G.L. c. 106, § 2-3 16, (2) alleging that plaintiff negligently allowed its hot water system to become leaky,

to exist without check valves and without an air tank and without proper location of circulators, (3) alleging that plaintiff refused to make modifications of its system to produce the heat from the boiler furnished ... in accordance with its designed capacity, (4) alleging that plaintiff refused to use defendant's "Air-X-Tank" or proper controls at the expansion tank, on the installation of a primary loop, manifolds for supply and returns, check valves in all zones and failed to eliminate water leaks, wherefore its responsibility was negatived, and (5) that the apparatus was damaged. To the answers were attached a wiring diagram and a copy of the piping diagram furnished by the defendant with the equipment and shown to the plaintiff before purchase.

The court found for the plaintiff in the sum of $8,055.00.

*At the trial there was evidence to show:*

The plaintiff owned three greenhouses situated in Needham which had been heated by a hot water system using a cast iron hot water boiler and an oil burner. This system was about 30 years old and had developed leaks. The Worcester Gas Company ("The Gas Company") made studies from which it stated that a gas boiler of about 1,400,000 BTU input would be needed to heat the greenhouse, including a proposed plastic addition.

After several conferences between Kirkland S. Gourley, Vice-President of the defendant's

company, one of defendant's salesman and the plaintiff, it was alleged that a Raypak gas fired boiler with a capacity of 1,413,000 BTU input (Model 1413) would do the job as outlined by the gas company, providing it was connected in accordance with the company's directions. All of its features were explained by Mr. Gourley or his representative to the plaintiff at the time. The boiler was delivered early in January of 1966.

After the boiler had been installed, the hot water in the heating pipes was 140 degrees instead 180 degrees. There were abnormal noises from the boiler. Peters, salesman for the defendant company, went to see the installation and reported that the boiler was not installed according to the diagram which had accompanied the written instructions when the boiler was delivered. Gourley himself later inspected the boiler and its was his opinion that it was not installed in accordance with their recommendations. The primary loop was not proper and there were leaks in the system and noises in the boiler. Thereafter, Mr. Gourley consulted the manufacturer in California and, among other things, the size of the pump was changed. Obviously, since the boiler was only giving out 850,000 BTU as against its rating of 1,413,000 BTU, either the boiler was not getting the manufacturer's gas pressure or there was something wrong with the boiler itself. In any event, after experimenting with a different pump and

the gas pressure, there was enough heat but a great deal of banging in the boiler.

In March, 1966, Mr. Gourley also obtained the services of a registered civil engineer specializing in heating systems to examine the operation. In the opinion of this expert, the defects in the installation were the cause of the banging and of the insufficiency of heat at the normal gas pressure of 3 1/2″ to 4″.

The boiler was installed for the plaintiff by John B. Donohoe, who was a graduate of Boston College with one year at the Harvard School of Design. He had worked for many years in a heating, ventilating, plumbing, and gas fitting business. He was a licensed journeyman, a master gas fitter, a master plumber and a registered civil engineer. He was a class A gas burner installer and had been retained by large concerns for gas equipment installation work. Donohoe assisted the plaintiff in all of the work in connection with the installation of the boiler. He understood the piping diagram and with the plaintiff did all of the work indicated in the detailed evidence set forth in this report. Donohoe was of the opinion that there was no difference between pushing water into the boiler and pulling it out from the boiler. He said there was friction in any pipe and the total friction in the whole system is a sum. There were various tests conducted of the boiler by Donohoe and the plaintiff and the defendant's representative, and when all was said and done, it was

Donohoe's opinion that the boiler was "under gassed" or else the rating was incorrect. He was of the opinion that the boiler operation was not affected by the piping, and that the rating and the piping were separate functions.

All sorts of tests were made in order to try and improve the efficiency of the boiler to no avail, and in June of 1966, the Raypack boiler was disconnected and the old boiler was "doped up" and put back into service with the oil burner. The changes recommended by the representative of the defendant were never made.

It is the contention of the defendant that the source of the trouble of this boiler was almost entirely the wrong orientation of the priming and zoning system and the defendant's agent prepared a sketch, which was sent, together with a letter of March 8, 1966, to the plaintiff suggesting certain changes which were not adopted. In other words, the opinion of the expert for the defendant differs completely with the opinion of Mr. Donohoe, who installed the boiler for the plaintiff, as to the cause of the difficulty.

The defendant duly made the following requests for rulings:

"1. The evidence warrants the conclusion that the boiler, with the attachments supplied by the manufacturer, would be fit for the purposes of the plaintiff.

"2. The evidence warrants a finding that the boiler furnished by the defendant

would have provided the amount of heat required by the plaintiff at a reasonable cost if it had been installed in the manner prescribed by the defendant.

"3. The evidence warrants a finding the installation instructions given by defendant to plaintiff for the installation of the boiler furnished by defendant were correct.

"4. The failure of plaintiff to follow the manufacturer's piping diagram or an alternate suggested by defendant's expert is a bar to a claim of breach of warranty by the plaintiff when the boiler failed to operate as represented by the defendant.

"5. Statements by salesman for defendant as to piping for a new kind of hot water for plaintiff's greenhouse were, as a matter of law, superseded by a piping diagram referred to in a final conversation and packed with the apparatus upon delivery to the plaintiff.

"6. The action of the plaintiff in having his own plumber prepare a piping diagram in lieu of following a piping diagram furnished by the defendant with the boiler sold by it to plaintiff, will be, if such plumber's diagram is found to have been defective, a bar to a claim of breach of warranty of fitness."

The judge made the following special findings:

"I find that the plaintiff, relying upon the skill and judgment of the defendant's representatives to select and furnish a gas boiler with which to sufficiently heat his greenhouses in Needham, purchased a No. 1413T Raypak boiler from the defendant.

"A plate attached to the boiler indicated the required capacity of 1,400,000 BTU necessary to heat the greenhouses. In fact the capacity of the boiler was only 850,000 BTU, quite insufficient to heat the greenhouses.

"It was insufficient boiler capacity and not the fault or deficiency of the piping or other appurtenances which was responsible for the inadequate heat which resulted in the loss of large quantities of the plaintiff's plants. The existing piping and other appurtenances had been approved at the outset by the defendant.

"After the defendant had filed (sic) and finally refused to remedy the situation, and abandoned it, it became reasonably necessary for the plaintiff to remove the boiler and to reinstall the oil burner which he had previously maintained.

"There was a breach of warranty by the defendant which resulted in great loss, damage and cost to the plaintiff, reduced by $600.00, the fair market value of the gas burner which is presently in the plaintiff's possession. The defendant was duly notified of the breach of warranty."

The judge ruled as follows on defendant's requests:

"Nos. 2, 3. Allowed. Nos. 4, 5, 6. Denied. I find that the boiler was expertly and correctly installed. It was the insufficient boiler capacity as noted in my special findings which constitutes the breach of warranty. Tests proved this."

The defendant claims to be aggrieved by the denials of its requests 4, 5 and 6.

The substance of this case would appear to be that although there was a great deal of testimony and opinion from various witnesses with respect to the cause of the failure of the boiler to properly heat the greenhouse, the trial judge after listening to all of the testimony and observing the witnesses and examining the exhibits, came to the conclusion that it was the insufficient boiler capacity and not the failure or deficiency of the piping or other appurtenances which was responsible for the inadequate heat; and that this failure was a breach of warranty.

We are not disposed to disturb that finding in view of the voluminous testimony which was heard "live" by the trial judge.

Credibility of the various witnesses was for the trial judge (*MacDonald* v. *Adamian*, 294 Mass. 187) — whether the witness was an expert in a certain field or an ordinary layman. This is the province of the trial judge. The defendant contends vigorously, both in his brief and in his argument before us, that the installation was imperfectly done, and that such imperfect installation was the cause of the diffi-

culty and was the sole reason the boiler did not produce the amount of BTU certified.

The evidence in this case was very technical and necessarily involved the opinion of experts; it is a well known fact that experts disagree. We are not prepared to say that the opinion of one expert is better than another, even though it may appear from the record in this case that one should have been more familiar with this type of boiler and its operation than the other. One would expect the expert who testified for the defendant to be more qualified in this particular category, but this does not necessarily follow. Donohoe, who testified for the plaintiff in this regard, appears to have a good background in this same kind of work, although the greater part of it may have been practical experience rather than technical education. However, the trial judge observed these witnesses and made his own judgment with respect to what value should be given to their respective opinions.

We cannot say on this record the judge was plainly wrong, and this we would have to do in order to reverse this finding. Findings of fact made by a trial judge in an action at law cannot be reversed unless they cannot be supported on any rational view of the evidence. *Abele* v. *Dietz*, 312 Mass. 685. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495 and cases cited.

Findings of fact, except when there is no

function for them in the evidence, must be sustained if the evidence reported, considered in its aspect most favorable to the prevailing party supports them. *Sutherland* v. *McGee,* 329 Mass. 530.

The judge in the instant case made ample findings of fact to justify the denial of requests for rulings Nos. 4, 5 and 6.

There being no prejudicial error, *an order should be entered dismissing the report.*

ROBERT W. CORNELL

of Boston for the plaintiff

STUART DE BARD

of Boston for the defendant, cited:

*Hunt* v. *Perkins Machinery Co.,* 352 Mass. 535, 541. *Whitty Mfg., Co.* v. *Clark,* 278 Mass. 370. *Scott* v. *Reasoner,* 279 Mass. 241.