COMMONWEALTH *vs.* LOTTEN BOOKS, INC.
(and a companion case[1]).

Suffolk.  June 8, 1981. — November 20, 1981.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Obscenity*, Dissemination of obscene matter, Possession of obscene matter. *Constitutional Law*, Equal protection of laws.  *Words*, "Possession," "Dissemination."

Providing coin-operated machines for the viewing of obscene films in individual booths constitutes dissemination of obscene films within the meaning of G. L. c. 272, § 29. [628]

The person in charge of a bookstore in which coin-operated machines were available for viewing obscene films in individual booths could be found to have been disseminating obscene films within the meaning of G. L. c. 272, § 29. [629]

The person in charge of a bookstore in which coin-operated machines were available for the viewing of obscene films in individual booths could be found to have been in possession of the films within the meaning of G. L. c. 272, § 29, even though he did not have the keys to the locked compartments in the booths where the films were kept. [629-632]

An individual prosecuted for possession of obscene films with intent to disseminate as a result of his employment in a bookstore where coin-operated machines were available for the viewing of obscene films was not denied equal protection of the laws by reason of his not having the benefit of the exemption granted to employees of motion picture theatres by G. L. c. 272, § 32. [632-633]

COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on June 29, 1978.

The cases were heard by *Feeney*, J., and reported by him to the Appeals Court.

*Regina L. Quinlan* for Lotten Books, Inc.

*Leonard A. Lucas* for Albert F. Pulli.

---

[1] Against Albert F. Pulli.

*Peter Grabler*, Legal Assistant to the District Attorney (*Sharon D. Myers*, Assistant District Attorney, with him) for the Commonwealth.

HALE, C.J. The defendants were charged with violation of G. L. c. 272, § 29, to wit, the possession of obscene films, knowing them to be obscene, and with intent to disseminate them. The defendants were convicted following a jury waived trial in the Boston Municipal Court, their motions for required findings of not guilty having been denied. Thereafter each filed a motion for reconsideration or for a new trial, the issues being the same as those raised in their earlier motions. The judge found the questions of law raised by those motions so important that pursuant to Mass.R. Crim.P. 34, 378 Mass. 905 (1979),[2] he reported[3] the following questions for this court's determination:

"1. Does the evidence, as introduced, constitute dissemination under Chapter 272, Section 29 as it pertains to the corporate defendant?

"2. Does the evidence, as introduced, constitute dissemination under Chapter 272, Section 29 as it pertains to the individual defendant?

"3. Does the evidence, as introduced, establish possession by the individual defendant under the provisions of Chapter 272, Section 29?

"4. Whether the Equal Protection Clause is violated where the individual defendant is not exempted from prosecution under the provisions of G. L. c. 272, §§ 29, 32."

The judge stated that the answers to these questions would determine his action on the defendants' motions.

The facts are undisputed and have been taken from a consolidated report of the court below. Defendant Lotten Books,

---

[2] See also Mass.R.A.P. 5, as appearing in 378 Mass. 930 (1979).

[3] We see no reason for a report in this case since nothing is gained over the normal procedure of appeal. The normal route of verdict and then appeal has been the traditional one because of the benefits a completed trial record affords the reviewing body, and this route should be followed in most cases.

Inc. (Lotten Books), is a corporation having a place of business at 6 Boylston Street in the adult entertainment district of Boston (also known as the Combat Zone). It operates a commercial bookstore at that location with viewing booths wherein patrons may view films by depositing quarters in a coin box. Outside the store there are numerous signs, some indicating that admission is limited to adults only, and others indicating that "Peep Shows" and "X-Rated Movies" are on the premises.

Detective Carey, who viewed the films before seeking a search warrant for them, described the interior of the viewing booths as slightly larger than a telephone booth, with the door of each booth used as the viewing screen. Each booth contained two projectors which were located in locked compartments above the booth which held the films in question. The films were on continuous-run cassettes so that they never needed rewinding. For each quarter deposited a viewer would see approximately one and one-half minutes of film.

A search warrant was obtained and executed on June 23, 1978. The defendant Pulli was observed on that day at the cashier's counter making change for customers. He also had been observed at the cashier's counter on the previous day when Detective Carey had viewed the films. During the execution of the search warrant, the police asked Pulli for the keys to the cabinets where the films were located. Pulli did not have the keys, nor were they on the premises. Pulli was allowed to make a phone call to one Attorney Russo, who later arrived at the store with the keys to the locked cabinets. There was no evidence at the trial that Pulli was an officer or director of Lotten Books, nor was there evidence that he had any responsibilities other than those of cashier and person in charge of the premises.

The court found the films to be obscene[4], describing them as containing explicit depictions of sexual conduct, focusing

---

[4] The court below viewed three films which were stipulated to be representative samples of the films seized.

primarily on sexual activity and portraying a minimal story. The defendants filed a waiver in the trial court of any question of obscenity and argue here only the issues raised by the reported questions.

*The Corporate Defendant.*

For Lotten Books to have been found guilty as charged, the court below had to have found (1) that the material was obscene; (2) that Lotten Books possessed the material; (3) that it knew the material to be obscene; and (4) that it intended to disseminate the material. Reported question no. 1 concerns only the fourth element of the crime, and Lotten Books does not question the sufficiency of the evidence on the first three elements, arguing only that there can be no dissemination as a matter of law because the use of peep show devices involves only the individual conduct of the person depositing the quarter into the device. We reject that contention and answer reported question no. 1, "yes."

The Legislature had defined "disseminate" in G. L. c. 272, § 31 (as appearing in St. 1974, c. 430, § 12), as: "to import, publish, produce, print, manufacture, distribute, sell, lease, exhibit or display." These terms must be given their usual and accepted meaning so long as it is consistent with the statutory purpose. *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977) (defining "books" and "magazines"). Webster's Third New International Dictionary 2105-2106 (1971) uses "show" as a synonym for "display" and defines "show" as "to cause or permit to be seen." Black's Law Dictionary 514 (5th ed. 1979) defines "exhibit" as: "To show or display; to offer or present for inspection." On the reported facts it is clear that the films were "exhibited" or "displayed" to the patrons who deposited their coins in the machines. See *People* v. *Campise*, 242 Cal. App. 2d Supp. 905 (1966) (defendant guilty of exhibiting obscene peep-show movie films).[5]

---

[5] While the reported question asks if dissemination occurred, the defendant was charged with "intent to disseminate." We note, however, that "intent to disseminate" can be inferred from a finding that actual dis-

*The Individual Defendant.*

All of the elements of the charge as to the defendant Pulli were the same as the elements required to be found as to Lotten Books. Pulli also does not question the sufficiency of the evidence on elements 1 and 3 above. Turning to question 2, we answer it in the affirmative for the same reasons we gave in answering question 1. Since persons in charge of establishments that disseminate obscene material have been found guilty of that dissemination — *Commonwealth* v. *Kocinski*, 11 Mass. App. Ct. 120 (1981) (obscene dancing) — and other cases apparently have assumed that such facts establish dissemination without addressing the issue — see, e.g. *Commonwealth* v. *Thureson*, 371 Mass. 387 (1976) (obscene peep shows); *Commonwealth* v. *Grant*, 7 Mass. App. Ct. 203 (1979) (obscene dancer); *Commonwealth* v. *Bono*, 7 Mass. App. Ct. 849 (1979) (obscene magazine) — we have no doubt that Pulli disseminated the films to the patrons of the Lotten Bookstore.[6]

We turn next to reported question 3, which concerns the second element of the offense. Pulli argues that the facts do not support a finding that he possessed the films exhibited to the patrons of the Lotten Bookstore. We disagree and answer reported question 3, "yes."

There is no statutory definition of "possession" under G. L. c. 272, § 29, and no case has been brought to this court's attention (and we have found none) which defines "possession" under § 29. In similar contexts, it has been recognized that what constitutes a significant external relationship between a person and an item which gives rise to the illegal possession of that item is not a question susceptible to a short generalized answer. See generally Annot., 91 A.L.R. 2d 810 (1963). Since we are dealing with a criminal statute,

---

semination has occurred. *Commonwealth* v. *Perron*, 11 Mass. App. Ct. 915, 917 (1981) (felonious intent inferable from commission of felonious act). *State* v. *Smith*, 422 S.W. 2d 50, 68 (Mo. 1967), cert. denied, 393 U.S. 895 (1968) (sale of obscene material competent evidence of possession with intent to sell).

[6] See note 5, *supra.*

the term must be construed strictly, with any ambiguity resolved in favor of the defendant. *Commonwealth* v. *Devlin*, 366 Mass. 132, 137-138 (1974). *Opinion of the Justices*, 372 Mass. 874, 876 (1977). The term, however, must also be construed with reference to the other phrases in the statute to form a "harmonious enactment effectual to accomplish its manifest purpose." *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 313 (1949).

The question of possession is usually to be determined by the trier of fact. *Commonwealth* v. *Guerro*, 357 Mass. 741, 752 (1970) (possession of motor vehicle master keys). It is settled law that ownership is not a requirement for finding possession so long as the person charged with possession had access to the items and could exercise dominion and control over them. *Id.* Two or more persons can possess illegal items so long as each has the requisite access, dominion and control. *Commonwealth* v. *Tilley*, 306 Mass. 412, 417-418 (1940) (illegal master keys). *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 659 (1976) (illegal drugs). We are not dealing with a property definition of "possession," but instead with a definition which will best reflect the intent of the Legislature.

We cannot say that the judge erred as a matter of law in finding that Pulli possessed[7] the films. The reported facts show that Pulli was the cashier and the one in charge of the bookstore. He therefore had sufficient control and dominion over the operations which resulted in the dissemination of the films that it could also be found that he possessed the obscene films. In answering reported question 2, "yes," we consider it clear that Pulli could have been found guilty if mere dissemination had been charged.[8] It would be anom-

---

[7] Although under the common law of crimes an employee had "custody" over his employer's goods and not "possession" (see generally Perkins, Criminal Law c. 4, § 1-2 [2d ed. 1969]), this distinction developed to narrow the common law crime of larceny (*id.*) and would not be dispositive of whether an employee possessed items owned by his employer in violation of a criminal statute.

[8] General Laws c. 272, § 29, as appearing in St. 1974, c. 430, § 9, also states that "whoever disseminates any matter which is obscene, knowing

alous to find that an employee who was an integral part of an establishment which disseminated obscene materials and who took an active part in supplying the customers of the establishment with the obscene material could not be found to have "possessed" the materials which he was engaged in distributing. In fact, our answer to question 2 that Pulli disseminated the films implicitly recognizes a degree of dominion over the films which enabled him to control their display and exhibition. A similar result, although involving the medium of obscene books, has been reached in another jurisdiction. See *State* v. *Smith*, 422 S.W. 2d 50 (Mo. 1967), cert. denied, 393 U.S. 895 (1968).

The fact that Pulli did not have the keys to the locked compartments where the films were kept does not require a different result. Constructive possession exists when a person has no present personal dominion over an item but has the intent and capability to maintain such dominion. *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976). The fact that Pulli could gain access to the compartments by the mere expedient of a phone call to someone who produced the keys supports a finding of at least constructive possession. A person cannot thwart the intent of the statute by placing the contraband in a locked compartment and then entrusting the keys to another party. See *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 583, 586 (1981). The judge was warranted in finding that Pulli possessed the obscene films.[9]

---

it to be obscene . . . shall be punished . . . ." The requirements to be found guilty under this part of the statute are the same as that part under which Pulli was charged, except no possession need be found, and actual dissemination need be proved instead of intent to disseminate. But since Pulli's intent to disseminate was proven through the judge's finding of actual dissemination (see *supra* note 4) the "dissemination" part of the statute would be satisfied.

[9] Although the United States Supreme Court has cited *Bottom* v. *Clarke*, 7 Cush. 487 (1851), for the proposition that possession of a locked trunk does not give rise to possession of its contents, *National Safe Deposit Co.* v. *Stead*, 232 U.S. 58, 68 (1914), the holding in *Bottom* was not that broad. *Bottom* involved trustee process against a bank which kept for safe keep-

We turn finally to reported question 4. The individual defendant does not contend that Lotten bookstore is a "motion picture theatre" so as to bring him within the exemption of G. L. c. 272, § 32, as appearing in St. 1974, c. 430, § 13, but argues instead that he is denied equal protection of the laws because he is criminally liable under a law which exempts similarly situated movie theatre managers. We disagree and answer reported question 4, "no."

This court has previously held that the constitutional right to equal protection of the laws is not violated when the Legislature chooses to distinguish between certain movie theatre employees and similarly situated bookstore employees when determining liability under the obscenity statutes. *Commonwealth* v. *Bono*, 7 Mass. App. Ct. 849 (1979). The use of a peep show device in order to disseminate the obscene material does not change the analysis. "When legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 417 (1972).

There was certainly a rational basis for treating personnel employed in peep show operations, such as the one before us, differently from those employed in motion picture theatres, as the similarity between these media is slight. Programs in motion picture theatres generally change frequently and what is to be shown may not be known to projectionists and cashiers and is likely to be out of their control. The Legislature might well conclude it is not fair to subject passive employees to risk of criminal prosecution in such circumstances. In the case of peep shows, on the other hand, the programming may be consistent if not unvarying, and

---

ing a judgment debtor's trunk of unknown contents. The court in *Bottom* held only that where a bank does not know the contents of a trunk in its vault and could not lawfully open it to ascertain whether attachable items were inside, it did not have possession of those unknown contents so as to authorize the sheriff to levy execution on the trunk and its contents.

the Legislature could properly conclude that whoever is in charge of the premises knows perfectly well what the business is about. Since the legislation is rational and free from invidious discrimination, we cannot review the wisdom, need, or appropriateness of it. *Mobil Oil Corp.* v. *Attorney Gen., supra.*

Having answered reported questions one through three, "yes," and question four "no," we remand the case to the District Court for further proceedings consistent with these answers.

*So ordered.*