van Gestel, J.
In a memorandum and order on the plaintiffs’ motion for class certification dated April 25, 2001, this Court directed: “the completion of relevant discovery leading to the serving and filing of a motion for partial summary judgment on the limited issue of whether the defendant, on or after May 27, 1995, rented automobiles in Massachusetts using rental agreements that failed to display information regarding ‘collision damage waivers’ in the manner and to the extent required by G.L.c. 90, Sec. 32E1/2(B)(2) and (C)(2).” Cross-motions on the issue directed are now before the Court.
BACKGROUND
The underlying case is a purported class action on behalf of the named plaintiffs and a class, or classes, of persons and entities who, during the period from May 27, 1995 to the present, rented automobiles in Massachusetts from the defendant, Enterprise Rent-A-Car of Boston, Inc. (“Enterprise”). The complaint alleges that Enterprise failed to adequately display to its customers information regarding the “collision damage waiver” in its rental contracts, as required by G.L.c. 90, Secs. 32E1/2(B)(2) and (C)(2).
Enterprise is a Massachusetts corporation in the business of renting private passenger automobiles throughout the Commonwealth. As such, Enterprise is a rental company whose business practices regarding collision damage waivers are governed by G.L.c. 90, Sec. 32E1/2.
In renting automobiles in Massachusetts during the class period, Enterprise used two basic forms of rental agreements: the “addendum” rental agreements and the “ticket jacket” rental agreements. The two kinds of forms are described below chronologically as to the times of their usage by Enterprise.
Addendum form of rental agreements
For the period from May 27, 1995, to in or about April 1997, two substantially similar forms of rental agreements, each utilizing “addendums” were in use by Enterprise in Massachusetts. Copies of these forms of agreement were provided to the Court.
The addendum rental agreements were made up of four pages, attached along the left side by a perforated strip, and a separate fifth page called the addendum. The first three pages are pre-printed carbonless duplicates on which information about the customer and the rental were included and, after the necessary information was completed on a computer keyboard by the salesperson, were emitted from a printer ready for initialing and signature by the customer. The pages *63 are not separated until after the initialing and signing is completed.
The first page was denoted on the bottom “AUDITOR’S COPY’; the second page was denoted on the bottom “INVOICE”; and the third page was denoted on the bottom “CUSTOMER COPY.” Except for their color — white, yellow and pink respectively — the three pages were identical. The fourth page contains advertising-type materials that are not relevant to the present issue.
The fifth page — the addendum — sets forth the collision damage waiver (“CDW”) notice, as well as additional information about CDW. This page is not part of the attached packet that includes pages one through four. It is said by Enterprise that the addendum page followed a format suggested by the Car and Truck Rental and Leasing Association of Massachusetts (“CATRALA”) in materials provided when Section 32E1/2 was enacted. CATRALA instructed that, to comply with the law, the notice language “must appear in your contract or on an addendum to your contract.”
In a box near the bottom of the left hand column of each of the three identical pages of this form of the rental agreement there appear the words, in capital letters: “SEE ADDENDUM FOR COLLISION DAMAGE WAIVER NOTICE, MASS GENERAL LAW CHAPTER 90, SECTION 32E1/2.”
If a customer using this form chooses to accept the CDW, he or she must initial a small box about an inch and a half long and less than V2 inch wide which is one of six such boxes in the upper middle of the face of the form.[1] There is also a place on the addendum where a customer could check and sign indicating acceptance or declination of the CDW.
There is a factual dispute, of a material nature, as to how the addendums were supposed to be handled, and were in fact handled. A senior official of Enterprise gave deposition testimony to the effect that Enterprise has had, throughout the class period, policies instructing its sales representatives that a customer had to sign the rental agreement and the customer had to initial the rental agreement either accepting or declining the CDW. That official, however, was uncertain about the existence of any written policy which instructed sales representatives that the customer also had to sign the addendum.
The Enterprise official also testified that it was Enterprise’s policy and practice in renting cars under the addendum rental agreements to provide the customer with the CUSTOMER COPY of the agreement and to staple the signed addendum to the AUDITOR’S COPY and retain the addendum along with the AUDITOR’S COPY in Enterprise’s business records.
In discovery in this case, Enterprise has located and produced its AUDITOR’S COPY of one of the plaintiff s October 19, 1996 rental agreements, but has not located or produced any addendum signed by that customer. The plaintiff/customer has no memory of having been shown or signed an addendum.
Ticket jacket form of rental agreements
It was in May of 1997, and from that time to the present, that Enterprise began using the ticket jacket form of rental agreements. Similar to the addendum form, the ticket jacket agreement consists of a three-page carbonless set. Attached to this form of rental agreement is a fourth page which is a white sheet containing advertising material. Also printed on the front side of the fourth page is the required CDW notice. Unlike the addendum on the earlier forms, which was a separate piece of paper, the ticket jacket is actually attached to the CUSTOMER COPY of the agreement in such a manner that it can be folded over and provide a jacket for the customer’s copy of the rental agreement. It is not removed from the CUSTOMER COPY even after the initialing and signing is completed.
Similar to the addendum form, on the lower left hand side of each of the three identical pages there appears the following, but now no longer in capital letters: “See ticket jacket for Collision Damage Waiver Notice Addendum, Mass Law Chap. 90, Sect. 32E1/2 hereby incorporated by reference and made a part hereof.” Again, the place for the customer to initial his or her acceptance or decimation of the CDW is in one of those six small boxes in the upper middle of the first page of the form. There is no place for a customer’s signature or initials regarding the CDW on the ticket jacket.
DISCUSSION
Summary judgment may be granted in those circumstances in which “the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.P. Rule 56(c).
The Court first turns, as it must, to the statute to examine its plain language. Section 32E1/2 was added to G.L.c. 90 in 1990. See St. 1990, c. 440. By Sec. 2 of the enabling statute, Sec. 32E1 /2 was made effective July 1, 1991.
Subsection (A) of Sec. 32E1/2 contains definitions. Included is a definition for “Collision Damage Waiver” that reads: “any contract or contractual provision whether separate from or a part of a rental agreement, whereby the rental company agrees, for a charge, to waive any or all claims against the renter for damages to or loss of the rented private passenger automobile during the term of the rental agreement.”
Enterprise is an “organization in the business of providing private passenger automobiles for rent to the public from locations in the state.” G.L.c. 90, Sec. 32E1/2(A). It is, therefore, subject to Sec. 32E1/2.
Subsection (B)(1) of Sec. 32E1/2 requires that:
*64 each collision damage waiver shall display the following notice in no smaller print than ten point type:
NOTICE: This contract offers, for an additional charge, a Collision Damage Waiver to cover your financial responsibility for damages to the rented vehicle. Your personal automobile insurance may already cover you for damage to a rental car. The purchase of a Collision Damage Waiver is optional and maybe declined. For Massachusetts drivers: If you have an automobile policy on your personal vehicle with coverage for collision, your policy will cover collision damage to a rental vehicle, less the deductible on your policy. Drivers who hold policies in other states should check with their insurance agents to determine whether their policies extend to rental vehicles.
The language called for, in the type size required, appears in the addendum portion of the addendum rental forms and on the first page of the ticket jacket portion of the ticket jacket forms of rental agreement.
Subsection (C)(1) of Sec. 32E1/2 provides that: “A rental company, in a rental agreement for a term of thirty days or less, may not sell a collision damage waiver unless the renter agrees to such collision damage waiver in writing by initialing the appropriate portion of the rental agreement at the time the rental agreement is executed.”
Subsection (C)(2) of Sec. 32E1/2 provides that: “No rental company may sell or offer for sale a collision damage waiver unless the rental agreement which applies to the particular transaction includes the notice required in Section one.”
Section 32E1/2 contains additional prohibitions regarding collision damage waivers not here relevant, and it provides for both criminal and civil penalties, the latter in an action brought on behalf of the Commonwealth, for each violation thereof. Further, the Director of Consumer Affairs and Business Regulation is directed to inform the Office of the Attorney General of any method, act or practice of which he is aware that is deemed by him to be a violation of any provision of Sec. 32E1/2.
There do not appear to be any appellate cases in Massachusetts interpreting Sec. 32E1/2 and there is essentially no helpful legislative history. Thus, the “statutory language [must be] the principal source of insight into the legislative purpose.” Bronstein v. Prudential Ins. Co. of America, 390 Mass. 701, 704 (1984).
Statutory interpretation, of course, is a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be utilized so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
Clearly, Sec. 32E1/2 is a statute designed to benefit consumers — here persons renting private passenger automobiles. The statute is designed primarily to alert such renters to the fact that they may not need to purchase a collision damage waiver proffered by a car rental company if their own automobile insurance policy provides such coverage. In short, the renter/consumer is being advised that he or she need not pay for additional insurance coverage when he or she may already have — and have paid for — the same coverage on his or her own vehicle. It is a statute protective of the rentee, not designed to provide shelter for the rentor. See, e.g., Alamo Rent A Car, Inc. v. Ryan, 268 Ill.App.3d 268, 273-74 (1994) (interpreting the Illinois statute regulating the sale of collision damage waivers).
The statute in no place dictates where on the rental agreement the waiver language must appear. Indeed, subsection (A) implies that the waiver may be on a contractual provision “separate from” the rental agreement. But subsection (B)(1) mandates that “each collision damage waiver shall display” (emphasis added), the requisite warning notice.
Black’s Law Dictionary 471 (6th ed. 1990) defines “display” as “an opening or unfolding, exhibition, manifestation, ostentatious show, exhibition for effect, parade.” The American Heritage Dictionary of the English Language 380 (1976), defines “display” as: “1. To hold up to view; make visible; expose; exhibit. 2. To make manifest or noticeable; show evidence of. 3. To exhibit ostentatiously or prominently; show off; parade; flaunt...” Merriam-Webster’s Collegiate Dictionary 335 (10th ed. 1999) says that to “display” is to “put or spread before view,” “make evident,” or “exhibit ostentatiously.” See Commonwealth v. Foster, 48 Mass.App.Ct. 671, 676 n.7 (2000). See also Common *65 wealth v. Lotten Books, Inc., 12 Mass.App.Ct. 625, 628 (1981).
Several years ago, the Supreme Judicial Court, in Hunt v. Perkins Machinery Co., Inc., 352 Mass. 535 (1967), had the occasion to interpret a portion of the Uniform Commercial Code relating to the exclusion of the implied warranties of merchantability and of fitness for a particular purpose. There the statute, G.L.c. 106, Sec. 2-316, required that, in the case of a writing, the exclusion must be "conspicuous.”[2] The court noted, at p. 540, that G.L.c. 106, Sec. 1-201(10) suggested a test for what is conspicuous, viz, whether “a reasonable person against whom .. . [the clause] is to operate ought to have noticed it.” Although not a part of Sec. 32E1 /2, it would not seem violative of the Legislature’s presumed intent thereby to apply a similar test to the word “display.” Is the CDW notice displayed in a manner that a reasonable person for whose benefit it is supplied ought .to have noticed it?
Hunt involved a factual situation not dissimilar to that here: a seller’s multi-part purchase order form, on a pad, with the pages separated by carbon paper. The disclaimer in Hunt was, like the collision damage waiver notice here, on the internal portion of the pad presented to and signed by the purchaser. At pp. 540-41 Justice Cutter wrote:
[T]he bold face printing on the front of the purchase order (although adequate in size and contrast with the rest of the printing on the form) was not in words sufficient to call attention to the language on the back of the form. That language would naturally be concealed because the forms were part of a pad of paper when Hunt signed the paper. There was no reference whatsoever on the front of the order to the “Terms and Conditions” as being on the back of the order, and the quoted words “Terms and Conditions” might have been thought to apply to other small type provisions on the front of the order unless Hunt had happened to turn over the form and look at the back of the order. His first reasonable opportunity to do this was when the executed form was returned to him.
Statutes that involve situations that are common to large numbers of people ought to be interpreted with some awareness about what transpires in the regulated circumstance. It would be few automobile owners that have never rented a private passenger vehicle. Thus, there are few who have not experienced those moments standing at a counter in a busy airport or elsewhere, handing over a driver’s license and a credit card to a car rental company salesperson, who then types information into a computer and waits for the attached printer to spit out the multi-part form. Experience tells this Court, although admittedly not at an Enterprise counter, that essentially always the form is handed over, with spaces where the customer is to initial and sign circled in pen by the salesperson, and the form is not separated until after the signing moment has passed. It would be rare indeed for the customer to demand to read the internal pages of the document before completing the signing.
When dealing with Enterprise’s addendum form of rental agreement, the CDW, appearing as it does only on the addendum, is obviously just as concealed — and therefore not “displayed” — if the addendum is never shown to the customer. This, of course, is a factual issue for each rental occasion that may not be well suited to class action treatment.
On Enterprise’s ticket jacket form, the lack of a display seems even more apparent; and more susceptible to class action treatment. The “ticket jacket” is not identified as such. More significantly, it is attached to the CUSTOMER COPY, which is the third page of the rental form packet, and no more likely to be seen by the renter until after signing than was the disclaimer found deficient in the Hunt case.
This Court must conclude that with regard to Enterprise’s addendum rental forms, in each instance in which it occurred, there would a failure to “display” the statutorily required notice regarding the collision damage waiver when the customer was not given the addendum.
Further, this Court concludes that with regard to Enterprise’s ticket jacket form of rental agreement, there is a failure to “display” the statutorily required notice regarding the collision damage waiver.
ORDER
For the foregoing reasons the motion of the plaintiffs for partial summary judgment is ALLOWED to the limited extent of this Court’s declaration that insofar as the ticket jacket form of rental agreement is concerned there is a failure to display information regarding collision damage waivers in the manner and to the extent required by G.L.c. 90, Sec. 32E1/2, and insofar as the addendum form of rental agreement is concerned there was a similar failure in each of those instances in which the customer was not provided a copy of the addendum before accepting the waiver. This ruling makes no determination, however, as to whether there was a failure with regard to the addendum being presented appropriately to the customers, those matters being factual, material and contested.
The defendant’s motion for summary judgment is DENIED.
REPORT OF THE CASE
This Court is of the opinion that the rulings made by it in this Memorandum so affect the merits of the controversy, including the issues involved in class certification, that the matter of statutory interpretation ought to be determined by the Appeals Court before any further proceedings in the Superior Court. The issues are of exceptional novelty and seem to have that cosmic quality that makes this case one of those rare few that is an appropriate candidate for a report. *66 See Transamerica Ins. Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 447-48 n. 2 (1992).
The law as it regulates the sale of collision damage waivers is untested in Massachusetts and is to some extent opaque. The ruling which this Court has attempted to provide will surely be appealed by the losing side. Therefore, without guidance from any Massachusetts appellate court, the efforts of counsel in litigating hereafter the complex issues in a class action context could be enormously expensive and wasteful.
In short, this Court productively ought go no further. It has wrestled with the statutory interpretation and made its rulings for whatever benefit they may provide to a reviewing court. Such rulings, however, will not obviate an appeal therefrom in this case. Consequently, either before an expensive class action trial or after it, there will be an appeal of this Court’s rulings. And nothing in the trial that follows will cause those rulings to change.
The Court, therefore, pursuant to Mass.R.Civ.P. Rule 64, reports to the Appeals Court the following two questions:
i. Whether, in using its addendum form of rental agreements, and assuming that no addendum was shown to the customer at the time of rental, Enterprise used rental agreements that failed to display information regarding collision damage waivers in the manner and to the extent required by G.L.c. 90, Sec. 32E1/2?
ii. Whether, in using its ticket jacket form of rental agreements, Enterprise used rental agreements that failed to display information regarding collision damage waivers in the manner and to the extent required by G.L.c. 90, Sec. 32E1/2?

 The form is a mass consisting, the plaintiffs assert, of “no less than 150 separate rectangular boxes of varying sizes, at least half of which contain text or diagrams."

 Black's Law Dictionary, Second Pocket Edition 133 (2001) defines “conspicuous” as “clearly visible or obvious.”