**LING AND COMPANY, Inc., Appellant,**

v.

**TRINITY SAVINGS AND LOAN ASSN.,**
Appellee.

No. 5043.

Court of Civil Appeals of Texas,
Waco.

Sept. 2, 1971.
Rehearing Denied Sept. 16, 1971.

Geary, Brice, Barron & Stahl, J. Christopher Bird, Dallas, for appellant.

Freedman, Day & Waters, Jimmy D. Ivy, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from a summary judgment. Appellant Ling and Co., Inc. had issued to one Bruce W. Bowman, Certificate No. A62 consisting of 1500 shares of class A common stock. Appellant Ling and Co. contends that the transferability of this share was and is restricted basically to the extent that the holder must grant an option of first refusal to Ling and Co.; but that Bowman did not observe such restrictions and transferred and assigned the stock certificate to appellee Trinity Savings and Loan Assn. as collateral for his promissory note to Trinity.

Bowman defaulted on payment of his note, following which appellee Trinity brought this suit (as plaintiff in the trial court) against Bowman as well as Ling and Co. to recover the unpaid balance of the note and to foreclose on Bowman's collateral, which is the stock certificate above referred to.

Bowman defaulted in the suit, and both appellant Ling and Co. and appellee Trinity filed their respective motions for Summary Judgment. Trinity's Motion was based on the contention that the transfer restrictions on the stock certificate in question were invalid and contrary to the laws of the State of Texas. Ling and Co.'s motion was based on the contention that the transfer from Bowman to Trinity violated the transferability restrictions set forth on the stock certificate.

The trial court sustained Trinity's motion for summary judgment and denied Ling and Co.'s motion and final judgment was entered accordingly. Appellant Ling and Co. has appealed from said judgment.

Disposition of this case turns on whether the stock certificate was subject to any valid restrictions on its transfer or pledge, insofar as Bowman's transfer and pledge to appellee Trinity was concerned. In an endeavor to solve this problem, let us first examine the pertinent wording recited on the front and back of the stock certificate. At the outset, let us point out that the pertinent wording upon which appellant relies on both the front and back are in the smallest print on their respective sides of the certificate, such print being commonly referred to as "fine print". The only exception was the word "Notice" as the first word hereinafter quoted on the back side, which word is in capital letters.

The first side recites the following language:

"The shares represented by this certificate are subject to all the terms, conditions and provisions of the Articles of Incorporation of the Corporation, as the same may be amended from time to time, which Articles are incorporated herein by reference as though fully set forth herein. Copies of the Articles of Incorporation may be obtained from the Secretary of State of the State of Texas or upon written request therefor from the Secretary of the Corporation."

And then the next paragraph says:

"See reverse side hereof for specific references to provisions setting forth preferences, limitations and restrictions."

Then on the back side of the certificate is the following language:

"NOTICE: The shares represented by this certificate are subject to all the terms, conditions and provisions of the Articles of Incorporation of the Corporation, as the same may be amended from time to time, which Articles are incorporated herein by reference as though fully set forth herein. Copies of the Articles of Incorporation may be obtained from the Secretary of State of the State of Texas or upon written request therefor from the Secretary of the Corporation. Reference is specifically made to the provisions of Article Four of the Articles of Incorporation which set forth the designations, preferences, limitations and relative rights of the shares of each class of capital stock authorized to be issued, which deny pre-emptive rights, prohibiting cumulative voting, restrict the transfer, sale, assignment, pledge, hypothecation or encumbrance of any of the shares represented hereby under certain conditions, and which under certain conditions require the holder hereof to grant options to purchase the shares represented hereby first to the Corporation and then pro rata to the other holders of the Class A

common stock, all as set forth in said Article Four."

Let us consider the language of some of the appropriate statutes bearing on this problem. Article 2.22 of the Texas Business Corporation Act, Subsection A, as amended in 1957, V.A.T.S., provides as follows:

"A. Any corporation may impose restrictions on the sale or other disposition of its shares and on the transfer thereof, *which do not unreasonably restrain or prohibit transferability* (italics ours), if each such restriction is expressly set forth in the articles of incorporation or by-laws of the corporation and is copied at length or in summary form on the face or so copied on the back and referred to on the face of each certificate representing shares, to the transfer of which the restriction applies."

The pertinent portion of Subsection B (passed in 1955) of Art. 2.22 provides:

"B. In addition to any other restrictions which may reasonably be imposed on the transfer of its shares by any corporation, in accordance with the foregoing provisions of this Article, any of the following restrictions may be so imposed:

\* \* \* \* \* \*

(2) Restrictions reasonably defining rights and obligations of the holders of shares of any class, in connection with buy-and-sell agreements binding on all holders of shares of that class, so long as there are no more than twenty (20) holders of record of such class."

Then Subsection E of Article 2.22 as amended in 1967 provides:

"E. Except as otherwise expressly provided in this Article, no provision of Article 8—Investment Securities of the Uniform Commercial Code of this State shall be deemed to be amended or repealed by any provision of this Act."

Now going to Article 8 of the Investment Securities portion of the Uniform Commer-

cial Code, we observe 8.204 entitled "Effect of Insurer's Restrictions on Transfer" which reads:

"Unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it."

The word "conspicuous" is defined by subsection 10 of Article 1.201 of the Uniform Commercial Code as follows:

"(10) 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court."

Funk and Wagnalls's Dictionary defines "conspicuous" as "exposed to the view; clearly visible; prominent and distinct; manifest; * * * Obvious to the mind; noticeable; striking."

We believe that the restrictions on transferability of the stock certificate in question are invalid for the following reasons:

1. They are not "conspicuously" printed on the stock certificate;

2. They are not reasonable; and

3. They fall outside the scope of Article 2.22 B(2) as above quoted.

■ Why are the restrictions not "conspicuous"? Because the language used is contained in the smallest print used respectively on both the front and back of the certificate, and is not calculated to attract the attention of any reader. Moreover, the language on the front as above quoted is a mere general reference to the Articles of Incorporation, as is the language in the first and second sentences on the back. The language on the back is single-spaced and difficult to read. The third sentence recites in effect that "under certain conditions" the transfer of the shares may be restricted, but does not in any manner specify under what conditions the transferability may be restricted. This appears to be a typical illustration of a material condition being deliberately couched in vague terms and fine print calculatedly designed to cause the reader to overlook same. This language in our opinion does not in any way meet the test of "conspicuousness" required by the statute.

■ The restrictions on transferability are unreasonable because the holder of the certificate, before he can transfer it, is required to secure the written approval of the New York Stock Exchange. Article Four, Subsection D of the Amended Articles of Incorporation of Ling and Co., provides:

"D. Each holder of any of the corporation's capital stock of any class agrees that during any period that the corporation is a member corporation of the New York Stock Exchange, such holder will not, without the prior written approval of the New York Stock Exchange, transfer, sell, assign, pledge, hypothecate, or otherwise create or permit to be created or suffer to exist any lien, charge or encumbrance upon any of such holder's capital stock of the corporation."

We believe this requirement on the stockholder to secure the approval of the New York Stock Exchange, a third party not in privity with either Bowman or Ling and Co., without any criteria for the Exchange to be governed by, in giving or withholding consent, is clearly arbitrary, capricious, and unreasonable.

■■ Most jurisdictions, including Texas, recognize the right of issuers to impose reasonable restrictions giving either the issuer itself or other stockholders the option to purchase the security at an ascer-

tained price before it is offered to third parties. Vannucci v. Pedrini, 217 Cal. 138, 17 P.2d 706 (1932); People ex rel. Rudaitis v. Galskis, 233 Ill.App. 414 (1924); Bloomingdale v. Bloomingdale, 107 Misc. 646, 177 N.Y.S. 873 (1919). The prevailing case law, however, recognizes free alienability as an inherent attribute of securities and holds invalid unreasonable restraints on alienation such as those requiring consents of directors without establishing criteria for the granting or withholding of such consents and those giving the directors an option to purchase at a price to be fixed in their sole discretion. Howe v. Roberts, 209 Ala. 80, 95 So. 344 (1923); People ex rel. Malcolm v. Lake Sand Corporation, 251 Ill.App. 499 (1929); Morris v. Hussong Dyeing Machine Co., 81 N.J. Eq. 256, 86 A. 1026; New England Trust Co. v. Abbott, 162 Mass. 148, 38 N.E. 432, 27 L.R.A. 271.

We do not see how or why consent of the New York Stock Exchange to transfer these shares of Ling and Co. would be required except to serve as a stumbling block for the shareholder in his efforts to transfer his stock.

■ The amended Articles of Incorporation of Ling and Co., authorized the issuance of 500,000 shares of class A common stock at a par value of Ten Cents per share, of which the stock certificate in question was a part. The Amended Articles further provided that a shareholder could not sell or transfer his shares unless he first gave notice to the corporation by certified or registered mail and gave the corporation an option to purchase all or any part of the stock at a price based upon a complex formula, one ingredient of which formula is the capital and surplus of the corporation; if any dispute should arise over the value of the capital and surplus, then a procedure was provided for a nationally recognized independent accounting firm to be employed to make a determination of value of the stock; when the price is finally determined, the corporation has 30 days to exercise its option to buy the stock or any part thereof; if the corporation does not exercise its option to buy any or all the shares, then the holder is required to notify all the then record holders of class A common stock and give them a ten day option to buy any stock not purchased by the corporation on a pro rata basis. Any shares which are not bought under the foregoing options are then free of any restrictions for 30 days. The record does not show how many shareholders of class A common stock Ling and Co. had, or how many of the 500,000 shares had been issued, but the parties stipulated that on the date on which the certificate in question was issued, to-wit, January 28, 1969, that Ling and Co., had more than twenty (20) holders of record of this class of stock.

We point out the above restrictions and procedures set up by Ling and Co., in their amended Articles of Incorporation, insofar as the Corporation itself and the other shareholders are concerned, because we believe this procedure puts such a burden on the shareholder as to be unreasonable, even laying aside the requirement that he get the approval of the New York Stock Exchange.

■ However, be that as it may, we believe that since Ling and Co. had more than 20 holders of record of class A stock, that Article 2.22 B (2) as above-quoted applies. In other words, we believe the lengthy option requirements above paraphrased from the Amended Articles of Incorporation constitute a "buy-and-sell agreement binding all holders of shares of that class," between the corporation on one hand and all class A common shareholders on the other. The wisdom of this statute is apparent, because if restrictions on transferring shares are permitted by the corporation such as those we have here, in situations where there are a great many stockholders, then it becomes too onerous and cumbersome a burden on the stockholder who wishes to transfer his stock,

and thereby becomes an unreasonable restraint on alienation of his stock.

Appellant contends that Article 2.22 B (2) applies only to buy-and-sell agreements *between or among the shareholders only and for the benefit of shareholders only* (italics ours.) The statute does not say this, and we do not put this interpretation on it.

Finding no error in the trial court's judgment, it is hereby affirmed.

Affirmed.