**LING AND COMPANY, INC., Petitioner,**

v.

**TRINITY SAVINGS AND LOAN ASSOCIA-
TION, Respondent.**

No. B–3019.

Supreme Court of Texas.

May 17, 1972.

Geary, Brice, Barron & Stahl, G. Leroy Street, Dallas, Tex., for petitioner.

Freedman, Day & Waters, Harry I. Freedman, Dallas, Tex., for respondent.

REAVLEY, Justice.

Trinity Savings and Loan Association sued Bruce W. Bowman for the balance owed on a promissory note and also to foreclose on a certificate for 1500 shares of Class A Common Stock in Ling & Company, Inc. pledged by Bowman to secure payment of the note. Ling & Company was made a party to the suit by Trinity Savings and Loan because of Ling & Company's insistence that the transfer of its stock was subject to restrictions that were unfulfilled. Bowman did not appear and has not appealed from the judgment against him. The trial court entered summary judgment in favor of Trinity Savings and Loan, against the contentions of Ling & Company, foreclosing the security interest in the stock and ordering it sold. The court of civil appeals affirmed. 470 S.W. 2d 441. We reverse the judgments and remand the case to the trial court.

The objection to the foreclosure and public sale of this stock is based upon restrictions imposed upon the transfer of the

stock by the articles of incorporation of Ling & Company. It is conceded that no offer of sale has been made to the other holders of this class of stock and that the approval of the pledge of the stock has not been obtained from the New York Stock Exchange. It is the position of Trinity Savings and Loan that all of the restrictions upon the transfer of any interest in this stock are invalid and of no effect. This has been the holding of the courts below.

The face and back of the stock certificate are reproduced and attached to this opinion.

The restrictions appear in Article Four of the Ling & Company articles of incorporation, as amended and filed with the Secretary of State in 1968. Section D requires the holder to obtain written approval of the New York Stock Exchange prior to the sale or encumbrance of the stock if, at the time, Ling & Company is a member corporation of the Exchange. Then Section E(4) prevents the sale of the stock without first affording the corporation the opportunity to buy and, if it fails to purchase, giving that opportunity to all holders of the same class of stock. The method of computation of the price, based upon the corporate books, is provided in this section of the articles.

The court of civil appeals struck down the restrictions for three reasons: the lack of conspicuous notice thereof on the stock certificate, the unreasonableness of the restrictions, and statutory prohibition against an option in favor of other stockholders whenever they number more than twenty. These objections will be examined in that order.

## CONSPICUÓUSNESS

■ The Texas Business Corporation Act as amended in 1957, V.A.T.S. Bus. Corp.Act, art. 2.22, subd. A, provides that a corporation may impose restrictions on the transfer of its stock if they are "expressly set forth in the articles of incorporation . . . and . . . copied at length or in summary form on the face or so copied on the back and referred to on the face of each certificate . . ." Article 2.19, subd. F, enacted by the Legislature at the same time, permits the incorporation by reference on the face or back of the certificate of the provision of the articles of incorporation which restricts the transfer of the stock. The court of civil appeals objected to the general reference to the articles of incorporation and the failure to print the full conditions imposed upon the transfer of the shares. However, reference is made on the face of the certificate to the restrictions described on the reverse side; the notice on the reverse side refers to the particular article of the articles of incorporation as restricting the transfer or encumbrance and requiring "the holder hereof to grant options to purchase the shares represented hereby first to the Corporation and then pro rata to the other holders of the class A Common Stock . . ." We hold that the content of the certificate complies with the requirements of the Texas Business Corporation Act.

■ There remains the requirement of the Texas Business and Commerce Code that the restriction or reference thereto on the certificate must be conspicuous. Sec. 8.204, V.T.C.A. Bus. & C., requires that a restriction on transferability be "noted conspicuously on the security." Sec. 1.201(10) of the Business and Commerce Code defines "conspicuous" and makes the determination a question of law for the court to decide. It is provided that a conspicuous term is so written as to be noticed by a reasonable person. Examples of conspicuous matter are given there as a "printed heading in capitals . . . [or] larger or other contrasting type or color." This means that something must appear on the face of the certificate to attract the attention of a reasonable person when he looks at it. Hunt v. Perkins Machinery Co., 352 Mass. 535, 226 N.E.2d 228 (1967); Boeing Airplane Co. v. O'Malley, 329 F.2d 585 (8th Cir. 1964); 1 Anderson, Uniform Commercial Code 87 (2nd ed. 1970). The line of print on the face of the Ling &

Company certificate does not stand out and cannot be considered conspicuous.

■ Our holding that the restriction is not noted conspicuously on the certificate does not entitle Trinity Savings and Loan to a summary judgment under this record. Sec. 8.204 of the Business and Commerce Code provides that the restriction is effective against a person with actual knowledge of it. The record does not establish conclusively that Trinity Savings and Loan lacked knowledge of the restriction on January 28, 1969, the date the record indicates when Bowman executed an assignment of this stock to Trinity Savings and Loan.

## REASONABLENESS

■ Art. 2.22, subd. A of the Texas Business Corporation Act provides that a corporation may impose restrictions on disposition of its stock if the restrictions "do not unreasonably restrain or prohibit transferability." The court of civil appeals has held that the restrictions on the transferability of this stock are unreasonable for two reasons: because of the required approval of the New York Stock Exchange and because of successive options to purchase given the corporation and the other holders of the same class of stock.

Ling & Company in its brief states that it was a brokerage house member of the New York Stock Exchange at an earlier time and that Rule 315 of the Exchange required approval of any sale or pledge of the stock. Under these circumstances we must disagree with the court of civil appeals holding that this provision of article 4D of the articles of incorporation is "arbitrary, capricious, and unreasonable." Nothing appears in the summary judgment proof on this matter, and the mere provision in the article is no cause for vitiating the restrictions as a matter of law.

■ It was also held by the intermediate court that it is unreasonable to require a shareholder to notify all other record holders of Class A Common Stock of his intent to sell and to give the other holders a ten day option to buy. The record does not reveal the number of holders of this class of stock; we only know that there are more than twenty. We find nothing unusual or oppressive in these first option provisions. See Coleman v. Kettering, 289 S.W.2d 953 (Tex.Civ.App.1956, no writ); 2 O'Neal, Close Corporations, § 7.13 (1971). Conceivably the number of stockholders might be so great as to make the burden too heavy upon the stockholder who wishes to sell and, at the same time, dispel any justification for contending that there exists a reasonable corporate purpose in restricting the ownership. But there is no showing of that nature in this summary judgment record.

## STATUTORY LIMIT ON OPTIONEES

Art. 2.22, subd. B of the Texas Business Corporation Act provides that, in addition to other reasonable restrictions, any of the following restrictions may be imposed upon the transfer of corporate shares:

(1) Restrictions reasonably defining pre-emptive or prior rights of the corporation or its shareholders of record, to purchase any of its shares offered for transfer.

(2) Restrictions reasonably defining rights and obligations of the holders of shares of any class, in connection with buy-and-sell agreements binding on all holders of shares of that class, so long as there are no more than twenty (20) holders of record of such class.

(3) Restrictions reasonably defining rights of the corporation or of any other person or persons, granted as an option or options or refusal or refusals on any shares.

■ The court of civil appeals regarded subsection (2) as being applicable to the stock restriction in this case. Since it was stipulated that there were more than twenty holders of record of Class A stock, it has been held that the restriction fails for this reason. We disagree. Subsection (2) is not applicable to the Ling & Company restriction. It seems that a "buy and sell agreement" usually refers to a contract

between shareholders rather than a restriction imposed by the corporation. In any event, there is no obligation to purchase this stock placed upon anyone, and these restrictions can only be considered as options and not "buy and sell agreements." 2 O'Neal, Close Corporations, § 7.10 (1971); Fletcher Cyc. Corp. § 5461.1 (1971).

The summary judgment proof does not justify the holding that restrictions on the transfer of this stock were ineffective as to Trinity Savings and Loan Association. The judgment below is reversed and the cause is remanded to the trial court.

DANIEL, J., concurs in result.

*For Value Received,____ hereby sell, assign and transfer unto_____Shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint_____Attorney to transfer the said Stock on the books of the within named Corporation with full power of substitution in the premises Dated_____19____ In presence of*

NOTICE. THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER

**NOTICE:** The shares represented by this certificate are subject to all the terms, conditions and provisions of the Articles of Incorporation of the Corporation, as the same may be amended from time to time, which Articles are incorporated herein by reference as though fully set forth herein. Copies of the Articles of Incorporation may be obtained from the Secretary of State of the State of Texas or upon written request therefor from the Secretary of the Corporation. Reference is specifically made to the provisions of Article Four of the Articles of Incorporation which set forth the designations, preferences, limitations and relative rights of the shares of each class of capital stock authorized to be issued, which deny pre-emptive rights, prohibit cumulative voting, restrict the transfer, sale, assignment, pledge, hypothecation or encumbrance of any of the shares represented hereby under certain conditions, and which under certain conditions require the holder hereof to grant options to purchase the shares represented hereby first to the Corporation and then pro rata to the other holders of the Class A Common Stock, all as set forth in said Article Four. Reference is also specifically made to the provisions of Article Nine which vests the power to adopt, alter, amend or repeal the by-laws in the Board of Directors except to the extent such power may be modified or divested by action of shareholders representing a majority of the holders of the Class A Common Stock.