In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00085-CV
_____

**FLOYD RILEY AND SONIA RILEY, Appellants**
v.

**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CW ABS INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5, CARRINGTON MORTGAGE SERVICES, LLC, AND MORTGAGE CONTRACTING SERVICES, LLC.**
**Appellees**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-201,456**

**OPINION**

Floyd Riley ("Floyd") and Sonia Riley ("Sonia") (collectively, "the Rileys") appeal the trial court's denial of their motion for partial summary judgment, its granting of summary judgment in favor of The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Benefit of the Certificateholders of the CW ABS Inc., Asset-Backed Certificates, Series 2004-5 ("BONYM"), Carrington

1

Mortgage Services, LLC, ("CMS") and Mortgage Contracting Services, LLC ("MCS") (collectively, "Appellees"), and its granting of Appellees' motion for protection from discovery.[1]

Because the Rileys' motion for partial summary judgment was premised on an affirmative defense to a claim which has since been dismissed, thereby mooting the affirmative defense, we overrule the Rileys' first issue without reaching its merits. Floyd's second issue involves Appellees' motion for summary judgment which asserts Floyd's counterclaims are barred by affirmative defenses of release and res judicata. As explained below, we agree Floyd's counterclaims for breach of contract and negligent misrepresentation are barred by res judicata, and we affirm that portion of the summary judgment. However, because we conclude the remainder of Floyd's counterclaims are not barred either by release or by res judicata, we reverse and remand in part. We conclude the Rileys' third issue, challenging the trial court's protective order, is moot because the order has expired. Lastly, because Sonia's appeal includes only issues one and three, both of which are moot, we dismiss her appeal as moot.

## Background

In 2004, the Rileys took out a $104,000.00 home equity loan secured by a deed of trust on their property in Beaumont. After the Rileys stopped making

---

[1]The Rileys are self-represented, both in the trial court and on appeal.

payments on the loan in 2010, BONYM's mortgage servicer's attorneys sent the Rileys a notice of acceleration in 2011 and filed a Home Equity Foreclosure Application under Rule 736 in the 58th District Court in Jefferson County, Texas, in 2013. *See* Tex. R. Civ. P. 736. The 58th District Court signed a Home Equity Foreclosure Order directing the foreclosure sale to take place after November 5, 2013. No such sale took place.

In May 2014, the Rileys filed a separate proceeding in the 172nd District Court in Jefferson County, Texas, to stop the foreclosure sale. In 2015, BONYM's mortgage servicer's attorneys sent the Rileys a letter rescinding its 2011 notice of acceleration. In 2016, the Rileys voluntarily dismissed their lawsuit in the 172nd District Court as part of a Settlement Agreement and Release ("the Agreement") executed by the Rileys, BONYM and its mortgage servicers on March 24, 2016. Under the terms of the Agreement, the Rileys received $60,000 from BONYM and $5,000 from one of BONYM's mortgage servicers in exchange for which the Rileys agreed to certain terms, including consent to a nonjudicial foreclosure, waiver of all defenses they may have to such a foreclosure, and a release of BONYM and its affiliates.

In late 2016, BONYM again provided notice of default and intent to accelerate and then filed an Application for Expedited Order under Rule 736 on a Home Equity Loan in the 60th District Court in Jefferson County, Texas. Despite the terms of the

Agreement, the Rileys answered and asserted defenses. Nevertheless, in July 2017, the 60th District Court signed a Home Equity Foreclosure Order allowing BONYM and its affiliates to proceed with foreclosure unless the Rileys filed "a separate, original proceeding… in accordance with Texas Rule of Civil Procedure 736.11." Although no such separate proceeding was filed, no such sale took place.

Instead, in March 2018, BONYM filed this lawsuit against the Rileys in the 136th District Court in Jefferson County, Texas. BONYM's petition does not mention any of the prior litigation between the parties, the Agreement, nor the 60th District Court's July 2017 Foreclosure Order, and simply alleges the Rileys defaulted on their home equity loan for which BONYM prays for an order allowing it to proceed with foreclosure. BONYM would later explain, "Unfortunately, legal counsel for [BONYM] in the 2018 Lawsuit was not the same legal counsel that represented [BONYM] in the previous 2014 Lawsuit. As a result, legal counsel for [BONYM] in the 2018 Lawsuit was unaware of the prior Settlement Agreement reached between the parties in the 2014 Lawsuit." The Rileys moved for summary judgment asserting BONYM's foreclosure action was barred by limitations since it had been over four years since BONYM sent its 2011 notice of default and intent to accelerate. The trial court granted summary judgment in the Rileys' favor in August 2018, signing a Final Judgment and Order which dismissed BONYM's claims with prejudice and ordered that BONYM's lien was void.

4

BONYM appealed to this Court. We would eventually reverse the summary judgment on the basis a genuine issue of material fact existed regarding whether BONYM timely rescinded its notice of acceleration pursuant to Texas Civil Practice and Remedies Code section 16.038. *See Bank of N.Y. Mellon v. Riley*, No. 09-18-00403-CV, 2019 Tex. App. LEXIS 9014, at *17 (Tex. App.—Beaumont Oct. 10, 2019, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 16.038. But in the meantime, on January 9, 2019, while the appeal was still pending in this Court, BONYM's mortgage servicer, CMS, allegedly sent its property preservation contractor, MCS, to enter the Property for the purpose of securing and winterizing it. MCS's alleged conduct on that date would subsequently lead to Floyd's filing counterclaims against BONYM and third-party actions bringing CMS and MCS into the case. The trial court's summary judgment disposition of those claims is now one of the issues before us in this appeal.

On March 7, 2019, the Rileys filed in the Jefferson County Clerk's Office's official public records a Release of Lien that had been signed by the judge of the 136th District Court on August 14, 2018, declaring BONYM's deed of trust invalid and void.

In June 2019, while the first appeal was still pending in this Court, BONYM filed a separate lawsuit against the Rileys in the United States District Court for the Eastern District of Texas, Beaumont Division, alleging the Rileys breached the terms

of the Agreement by "(1) asserting false rights to the Property, (2) claiming [BONYM's] lien interest is invalid, and (3) otherwise engaging in vexatious litigation aimed at denying [BONYM] the benefit of its bargain as obtained through the Settlement Agreement."

In October 2019, shortly after we issued our ruling and remanded the state court case back to the 136th District Court, Floyd filed his Original Counterclaims against BONYM, alleging BONYM's agents (including CMS and MCS) forcibly entered his property on January 9, 2019, after the deed of trust had become void, and "invaded his privacy, sorted through his personal mail and closets, took interior photographs, post[ed] embarrassing notices visible to the public, publicly revealed private information [to his neighbors] and change[d] the locks."[2] *See Bank of N.Y. Mellon*, 2019 Tex. App. LEXIS 9014, at *17. Floyd's Counterclaim asserts BONYM is liable for trespass, invasion of privacy (both by intrusion upon seclusion and by revealing private facts), intentional infliction of emotional distress through abuse of process and malicious prosecution, negligence, gross negligence, negligence per se (by harassment, trespass, criminal mischief and threat), and negligent hiring or

---

[2]There is no indication in the record that Sonia ever joined in Floyd's counterclaims or third-party actions.

supervision.[3] Based on the same allegations, Floyd obtained leave of court and joined CMS and MCS as third-party defendants.

In January 2021, the Rileys moved for partial summary judgment in state court asserting BONYM's foreclosure action was barred by limitations because Texas Civil Practice and Remedies Code section 16.038, which tolls limitations upon a rescission of a notice of acceleration, is unconstitutional, either facially or as a retroactively applied. The trial court's denial of that motion is now one of the issues in this appeal.

In March 2021, the federal district court granted summary judgment in favor of BONYM, holding the Rileys "breached the Agreement when they first challenged BONYM's 2016 application for a foreclosure order." *Bank of N.Y. Mellon v. Riley*, No. 1:19-CV-00279, 2021 U.S. Dist. LEXIS 129416, at *8 (E.D. Tex. Mar. 23, 2021). The summary judgment concludes with language that "this judgment serves as an order authorizing [BONYM] to judicially foreclose its lien in compliance with Texas Constitution [article] XVI, [section] 50(a)(6), the Loan Agreement and [Texas Property Code section] 51.002." *Id*. at *11. In July 2021, the 136th District Court abated further proceedings in this case pending the outcome of the Rileys' appeal to

---

[3]The pleading was subsequently amended to add claims for alleged violations of the Texas Debt Collection Act, trespass to try title, breach of contract, negligent misrepresentation, and civil conspiracy, and a request that the court declare Texas Civil Practice and Remedies Code section 16.038 unconstitutional.

the Fifth Circuit. In June 2022, the Fifth Circuit affirmed the summary judgment for BONYM. *See Bank of N.Y. Mellon v. Riley*, No. 21-40383, 2022 U.S. App. LEXIS 15042 (5th Cir. June 1, 2022).

In July 2022, the 136th District Court lifted the abatement, and in August 2022, Appellees filed a Motion for Protection which the trial court granted in September 2022, protecting Appellees from any further discovery until the court had ruled on a motion for summary judgment to be filed by Appellees. Whether the trial court erred in entering the protective order is one of the issues now on appeal.

In October 2022, Appellees moved for summary judgment seeking dismissal of the counterclaims and third-party claims contained in the Floyd's Fourth Amended Counterclaim and Third-Party Claims, arguing all such claims were barred by res judicata upon resolution of the federal court case and, alternatively, had been released under the terms of the Agreement. Attached as evidence to Appellees' motion for summary judgment were several exhibits, including an affidavit, a copy of the Agreement, certain pleadings and orders from the federal litigation, and a copy of the Fifth Circuit's opinion. After Floyd filed his Fifth Amended Counterclaims and Third-Party Claims, Appellees amended their motion for summary judgment, reasserting their arguments that all such claims are barred by the defenses of res judicata and release. Although the amended motion for summary judgment references the same exhibits that were attached to the original motion, additional

copies of those exhibits are not attached to the amended motion. Whether the trial court properly considered the exhibits is one of the issues now on appeal.

In January 2023, the trial court granted Appellees' Amended Joint Motion for Summary Judgment and dismissed with prejudice all claims asserted by the Rileys' against Appellees. After BONYM announced it was voluntarily dismissing its claims against the Rileys, the trial court entered final judgment in February 2023, and the Rileys timely appealed. Whether the trial court erred in granting the summary judgment is one of the issues now on appeal.

**Analysis**

1. *The Rileys' Motion for Partial Summary Judgment*

In their first issue, the Rileys argue the trial court erred when it denied their Traditional Motion for Partial Summary Judgment on the Affirmative Defense of Limitations. The motion asserts that because BONYM brought its foreclosure action more than four years after issuing its December 28, 2011, notice of default and acceleration, the deed of trust became void on December 28, 2015. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001) ("When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void."). The Rileys further argue BONYM did not effectively rescind its notice of acceleration, and the tolling provision contained in Texas Civil Practice and Remedies Code section 16.038 is

9

unconstitutional. In response, Appellees argue the Rileys' complaint about the trial court's denial of their motion for partial summary judgment was made moot when BONYM dismissed its claim for judicial foreclosure. We agree with Appellees.

The Rileys assertions that BONYM's claims are barred by limitations and that section 16.038 is unconstitutional are defensive in nature because they seek only to bar BONYM's claims and do not seek affirmative relief. The Final Judgment orders that BONYM's "claims against the Rileys are DISMISSED WITHOUT PREJUDICE." A nonsuit extinguishes the dismissed claim, making the merits of the claim moot. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "Any ruling on the merits of a moot issue constitutes an advisory opinion, which we lack jurisdiction to issue." *In the Int. of J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021) (citing Tex. Const. art. II, § 1). We have no jurisdiction to issue an advisory opinion on the merits of a claim that is no longer being asserted, including whether it may have been barred by an affirmative defense. *See Baker v. Limestone Cnty.*, No. 10-19-00219-CV, 2021 Tex. App. LEXIS 827, at *6-7 (Tex. App.—Waco Feb. 3, 2021, pet. denied) (mem. op.) (County's nonsuit of claim for delinquent taxes mooted entire controversy, including taxpayers' defenses and arguments which were not affirmative claims for relief.).

Therefore, we do not reach the merits of the arguments made in the Rileys' motion. Although the issues of whether BONYM effectively rescinded its notice of

10

acceleration, whether section 16.038 is unconstitutional, and whether the deed of trust is void may or may not be moot in the context of Floyd's counterclaims on remand, the trial court's denial of the Rileys' motion based on the affirmative defense of limitations is moot because BONYM's foreclosure claim has been dismissed. The Rileys' first issue is overruled.

### 2. *Appellees' Motion for Summary Judgment*

Floyd presents alternative arguments in support of his second issue in which he asserts the trial court erred in granting summary judgment in favor of Appellees. First, Floyd argues summary judgment was improper because exhibits that were attached to Appellees' original motion for summary judgment were not also attached to their amended motion. Secondly, Floyd asserts that even if the exhibits were properly considered by the trial court, genuine issues of material fact exist regarding whether his counterclaims were released in the Agreement and whether they are barred by res judicata.

### a. *Evidentiary Issues*

Texas Rule of Civil Procedure 166a(c) permits a trial court to consider various forms of summary judgment evidence, including affidavits and authenticated records "on file at the time of the hearing[.]" Tex. R. Civ. P. 166a(c); *see also AmeriGas Propane, L.P. v. Aboytes-Muñiz*, No. 09-18-00122-CV, 2019 Tex. App. LEXIS 3992, at *11 (Tex. App.—Beaumont May 16, 2019, pet. denied) (mem. op.) ("The

11

trial court may consider all competent evidence on file at the time of the summary judgment hearing."). The rule does not require summary judgment evidence to be physically attached to the motion. *See Kastner v. Jenkens & Gilchrist, P.C.,* 231 S.W.3d 571, 581 (Tex. App.—Dallas 2007, no pet.). A trial court is not required to sift through voluminous exhibits in search of evidence not specifically referenced in a summary judgment motion or response. *See Costanzo v. Tex. Advantage Cmty. Bank N.A.,* No. 09-21-00345-CV, 2022 Tex. App. LEXIS 7249, at *8 (Tex. App.— Beaumont Sep. 29, 2022, no pet.) (mem. op.). It is not error, however, for a trial court to consider exhibits that are both on file with the court and properly referenced in the motion or response. *See Lance v. Robinson*, 543 S.W.3d 723, 733 (Tex. 2018) (trial court properly considered evidence admitted during earlier temporary injunction hearing and specifically referenced in motion for summary judgment); *R.I.O. Sys. v. Union Carbide Corp.*, 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1989, writ denied) (trial court properly considered exhibits attached to previous motion for summary judgment and referenced in motion currently before the court).

Here, Appellees' exhibits were on file with the court by virtue of having been attached to the original motion for summary judgment. These same exhibits, although not physically attached to the amended motion, were referenced in that motion and each exhibit was specifically cited as support for the various grounds

and arguments therein. Moreover, the trial court's Final Judgment includes findings that Appellees' exhibits were "properly before the Court" and that "the evidence cited in the Amended Joint Motion for Summary Judgment was the same as the evidence attached to the Joint Motion for Summary Judgment." Because the exhibits were both on file and specifically referenced in the amended motion, we conclude it was not error for the trial court to consider them. We overrule the first subpart of Floyd's second issue.

### b. Substantive Issues

Next, we consider Floyd's arguments that summary judgment was improper because genuine issues of fact remain with respect to Appellees' affirmative defenses of release and res judicata. A party seeking a traditional summary judgment under Rule 166a(c) may either conclusively negate at least one element of each of the other party's claims or conclusively establish each element of an affirmative defense with respect to each of the other party's claims. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); Tex. R. Civ. P. 166a(c). Appellees' amended motion does not attempt to negate Floyd's counterclaims; instead, it asserts the summary judgment evidence conclusively establishes at least one of two affirmative defenses: release or res judicata. Because the trial court's order does not specify the grounds upon which summary judgment was granted, we must affirm if

13

either ground is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

i. *Release*

Appellees' amended motion for summary judgment asserts Floyd's counterclaims are barred by the release contained in the Agreement. The parties disagree about the scope of the release, which reads as follows:

> **Plaintiffs' Release**. For consideration of the Payments, the receipt, and sufficiency of which are hereby expressly acknowledged, the Plaintiffs for themselves and each of their present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (collectively "**Releasors**") unconditionally and irrevocably remise, waive, satisfy, release, acquit, and forever discharge Defendants BANA, Ditech, and BONY and each of their present, former and future parents, predecessors, successors, assigns, assignees, affiliates, subsidiaries, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, members, joint ventures, co-venturers, officers and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent or actual), representatives, employees, managers, administrators, and/or each person or entity acting or purporting to act for them or on their behalf, as well as any past, present or future person or any entity that held or holds any interest in the Loan, including the underlying Note and Deed of Trust, including but not limited to Bank of America Corporation and all of its subsidiaries and affiliates (collectively the "**Releasees**"), and each of them respectively, from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, arising at law or in equity, by

14

right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever that the Releasors, or their attorneys, agents, representatives, predecessors, successors and assigns, have or may have against the Releasees, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity, including, without limitation, the claims made or which could have been made by the Plaintiffs arising from the origination or servicing of the Loan (in any manner) as well as in any way related to the underlying Property, Note, and/or Deed of Trust any servicing act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation as of the date of this Agreement (collectively "**Released Matters**").

The question before the trial court and now before us is whether the release applies only to past and present claims as of the date the release was signed on March 24, 2016, or whether it also includes future claims, specifically those arising out of Appellees' alleged conduct in January 2019. For a claim to be released, the claim must be mentioned in the release. *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). "[A]ny claims not clearly within the subject matter of the release are not discharged. Furthermore, general categorical release clauses are narrowly construed." *Id*. (internal citations omitted). "A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally." *Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023). "When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). "We give terms their plain, ordinary, and generally

15

accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d 118, 121 (Tex. 1996). "To determine a term's common, ordinary meaning, we typically look first to dictionary definitions and then consider the term's usage in other authorities." *Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019). "Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo using well-settled contract-construction principles." *URI,* 543 S.W.3d at 763.

Although Floyd does not assert the Agreement is ambiguous, he argues the Agreement means one thing while Appellees argue it unambiguously means another. We may conclude that a contract is ambiguous even when neither party asserts that it is. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993). On the other hand, "[a] contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). A contract is ambiguous "when its meaning is uncertain and doubtful" or if it "is subject to two or more reasonable interpretations after applying the pertinent rules of construction[.]" *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Here, the release initially describes "Released Matters" as "any and all past and present claims..."[4] The words "past and present" immediately preceding the word "claims," reduces the universal set of "claims" to two smaller sets: "past claims" and "present claims." In this context, "past" and "present" are adjectives describing the noun "claims." The word "past" means "having happened or existed before now[.]" *See* "past" *Cambridge Online Dictionary.* https://dictionary.cambridge.org/us/dictionary/english (last visited Mar. 11, 2025) The word "present" means "happening or existing now." *See* "present" *Id*.

Later in the sentence, various alternative conditions are listed, sometimes using the word "whether" and sometimes implying its use. The word "whether" in this context, is a conjunction meaning "it is not important if." *See* "whether" *Id*. These phrases clarify the parties' intent that "Released Matters" means "any and all past and present claims" and that "it is not important if" any of the alternative conditions exist. For example, we are told "Released Matters" means "any and all past and present claims… whether known or unknown." The latter phrase neither increases nor decreases the number of claims included within the earlier descriptive

---

[4]We acknowledge this part of the description of "Released Matters" also includes "counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities," but because there is no disagreement about the meaning of this language, we use the word "claims" as an abbreviated reference to the full description contained in the release.

phrase. Indeed, that is the point of the various phrases beginning with "whether." Stated another way, the two sets, "past claims" and "present claims," combined, contain the exact same claims as the four subsets, "past known claims," "past unknown claims," "present known claims," and "present unknown claims."

Applying this same interpretive tool to the phrase, "whether existing now or to come into existence in the future," we observe that the two subsets, "past claims" and "present claims," combined, still contain exactly the same claims as the four subsets, "past claims… existing now," "present claims… existing now," "past claims… to come into existence in the future" and "present claims… to come into existence in the future." Neither party asserts that when the Agreement was signed, Floyd's claims for conduct occurring almost three years later would qualify as "past claims… existing now" or "present claims… existing now." Rather, Appellees seemingly argue the claims should be considered "past claims… to come into existence in the future" or "present claims… to come into existence in the future." But neither a "past claim," (that is, a claim that "happened or existed before now") nor a "present claim" (that is, a claim that is "happening or existing now") can "come into existence in the future." Just as the phrase "all whole numbers between one and ten, whether less than eleven or greater than eleven" includes only the whole numbers one through ten, the phrase "all past and present claims… whether existing now or to come into existence in the future" includes only past and present claims.

18

We conclude Floyd's interpretation of the release – that it applies only to past and present claims as of the date it was signed – is reasonable.

Appellees argue on appeal, "This clause clearly released all claims, including past claims, present claims, and claims 'to come into existence in the future[.]'" But that is not what the release says. "The parties' intent is governed by what they said in the [] contract, not by what one side or the other alleges they intended to say but did not." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010). Appellees' argument deletes the word "whether" inserts the word "including," replaces "or" with "and" and demotes the words "past" and "present" by moving them out of the primary descriptive phrase and into the secondary list of supposedly "included" claims. But even if the release could be grammatically interpreted as Appellees assert, our inquiry does not stop there, because we must determine whether such an interpretation is reasonable. For if both Floyd's and Appellees' interpretations are reasonable, the release is ambiguous and its meaning is a question for a jury, whereas if only Floyd's interpretation is reasonable the release can be construed as a matter of law. *See Bd. of Regents of the Univ. of Tex. Sys. v. Idexx Labs., Inc.*, 691 S.W.3d 438, 445 (Tex. 2024) ("A limited examination may yield reasonable, conflicting interpretations, but only when one interpretation does not clearly emerge as correct after a full examination is a contract ambiguous and the determination of its meaning left to a jury.").

19

Our rules of construction instruct us to avoid construing a contract in a way that is "unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). "We also avoid constructions of contract language that would lead to absurd results." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). "If a contract is susceptible to more than one construction and one of those makes the contract fair, customary, and such as prudent people would naturally execute, while the other would make it inequitable, unusual, or such as reasonable people likely would not execute, we will adopt the rational and probable interpretation." *Ill. Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 533 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

We note that Floyd's counterclaims fall into four categories: intentional torts, negligence, gross negligence and breach of contract. The Texas Supreme Court has held that pre-injury waivers of future liability for harm resulting from gross negligence, recklessness, intentional conduct and breach of contract are unenforceable because they are contrary to public policy. *See Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 116 (Tex. 2014). The Texas Supreme Court has also held that to release a party from liability for future negligence, the release must satisfy "the fair notice requirements of conspicuousness and the express negligence doctrine[.]" *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993) (citing *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.

20

1987)); *see also Littlefield v. Schaefer*, 955 S.W.2d 272, 274-75 (Tex. 1997). "The express negligence doctrine requires that the parties' intent to release [one of the parties] from liability for its own future negligence 'must be expressed in unambiguous terms within the four corners of the release.'" *Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 289 (Tex. App.—Beaumont 2005, pet. denied). For a contractual provision to be considered conspicuous, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Ling & Co. v. Trinity Sav. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex. 1972). The language of the release in this case does not satisfy these requirements.

We conclude it would be unreasonable to construe the release in this case as a release of liability for future negligence, gross negligence, intentional torts or breach of contract, because to do so would render the release unenforceable on grounds of public policy as expressed by the Texas Supreme Court in *Zachary*, *Dresser* and *Littlefield*. After a full examination of the release, only one interpretation – Floyd's – clearly emerges as correct. *See Bd. of Regents*, 691 S.W.3d at 445. Because the release has only one reasonable interpretation, it is unambiguous and applies only to claims existing on or before the date it was signed.

Appellees did not carry their burden to conclusively establish their affirmative defense that Floyd's counterclaims were released in the Agreement Floyd signed almost three years before Appellees allegedly engaged in the conduct on which the

counterclaims are based. Therefore, summary judgment was improper unless Appellees conclusively established their other affirmative defense – res judicata.

### ii. Res Judicata

Appellees' amended motion for summary judgment asserts Floyd's counterclaims are barred by res judicata. More specifically, Appellees argue Floyd was required to bring his claims as compulsory counterclaims in the federal district court where Appellees sued the Rileys for breaching the terms of the Agreement by opposing Appellees' foreclosure efforts. In response, Floyd argues his counterclaims are permissive, not compulsory.

When a party asserts a state court claim is barred by an earlier federal court judgment, "federal law controls whether the principles of res judicata will bar a later state court proceeding." *Daic v. Nauru Phosphate Royalties, Inc.*, 27 S.W.3d 695, 699 (Tex. App.—Beaumont 2000, pet. denied). The Fifth Circuit Court of Appeals has explained,

> Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citations omitted). Floyd asserts the fourth element is lacking.

22

Whether the fourth element is satisfied depends on the application of the compulsory counterclaim rule. *See Dillard v. Sec. Pac. Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988). Federal Rule of Civil Procedure 13(a) states the following,

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a). "To determine whether two claims constitute the same claim or cause of action, we apply the 'transactional test.' The critical question in applying the transactional test is 'whether the two actions were based on the same nucleus of operative facts.' This means we evaluate the 'factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies.'" *Bank of N.Y. Mellon*, 2022 U.S. App. LEXIS 15042, at *9 (citations omitted).

This case is unique in that BONYM brought two separate lawsuits that were pending at the same time against the Rileys, and Floyd filed his counterclaims only in the first lawsuit. The Fifth Circuit, rejecting the Rileys' assertion that BONYM had engaged in claim-splitting by filing two lawsuits, observed, "The central transaction in the first suit [in the 136th District Court] was related to the Rileys' deed of trust and [BONYM's] efforts to enforce that deed of trust and foreclose on the Beaumont property. The second action [in federal district court], on the other hand, involved a different transaction, as it focused on a settlement agreement

23

between the parties and the Rileys' subsequent breach of that agreement." *Bank of N.Y. Mellon*, 2022 U.S. App. LEXIS 15042, at *10-11. Given the different transactions central to the two separate lawsuits, we must determine whether Floyd's counterclaims involve the same nucleus of operative facts as the federal case arising out of the Agreement rather than those involved in BONYM's efforts to enforce the deed of trust and foreclose on the Property, which is the subject of the state court case currently before us.

Appellees argue on appeal, "Specifically at issue in the [federal district court case], as observed by the Fifth Circuit, was BONYM's right to possession of real property, under a settlement agreement, with the court stating, 'the contract stipulated that the Rileys were to turn over the property to [BONYM].'" The Fifth Circuit in that section of the opinion is referring to the Rileys' obligation under the Agreement to turn over title to, rather than possession of, the Property through consent foreclosure, ultimately concluding the amount in controversy exceeded the $75,000 threshold for diversity jurisdiction as measured by the value of the Property BONYM should have received under the Agreement. *Bank of N.Y. Mellon*, 2022 U.S. App. LEXIS 15042, at *8 ("the value of the property captures the expected value of the contract"). The opinion never mentions possession, and we note that "a foreclosure sale 'transfers title from the debtor to another party, but it does not put the new owner in possession; it gives him a right to possession… To remove a tenant

24

by sufferance, the new owner must file a forcible detainer suit.'" *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 918 (Tex. 2013) (quoting *Lighthouse Church v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied)); *see also Cody v. Bank of N.Y.*, No. A-15-CV-00332-LY-ML, 2015 U.S. Dist. LEXIS 137407, at *17-18 (W.D. Tex. Oct. 8, 2015). Although BONYM's lawsuit in federal district court involved issues of whether the Rileys breached the Agreement by opposing BONYM's efforts to obtain title to the Property through uncontested foreclosure, it did not involve issues regarding possession nor whether BONYM or its contractors had any right to enter and secure the Property in January 2019.

Appellees also argue, "The common nucleus of operative facts in both the Settlement Agreement Litigation and the present lawsuit is the Settlement Agreement and the rights of the parties under the Settlement Agreement." With respect to Floyd's claims for breach of contract and negligent misrepresentation, we agree. According to Floyd's live pleading, Appellees breached the Agreement's confidentiality provision by disclosing its terms without prior notice and without redacting confidential information. Floyd also alleges Appellees negligently misrepresented, in the Agreement, that they would provide Floyd advance notice and an opportunity to protect confidential information. The pleading makes clear that these two claims are based on the parties' alleged rights and duties arising out of the

25

Agreement. Because BONYM sued in federal court alleging the Rileys breached the Agreement, Floyd was required by Federal Rule 13(a) to assert these claims as counterclaims in the federal case, and because the federal litigation has concluded in a final judgment, these claims are barred by res judicata.

Next, we consider Floyd's remaining claims for trespass, invasion of privacy (both by intrusion upon seclusion and by revealing private facts), intentional infliction of emotional distress through abuse of process and malicious prosecution, negligence, gross negligence, negligence per se (by harassment, trespass, criminal mischief and threat), and negligent hiring or supervision, violation of the Texas Debt Collection Act, and trespass to try title and civil conspiracy. Continuing their argument that the Agreement is the common nucleus of operational fact in both the federal and state court litigation, Appellees assert, "The Settlement Agreement provide[d] that the Rileys would abandon the property at issue and permitted Appellee BONYM and its agents to access the property for securitization and winterization." Our review of the Agreement, however, reveals no such language.

The Agreement contains a provision requiring the Rileys to maintain the Property "[d]uring the time [the Rileys] and any other current occupants continue to occupy the Property before 11:59 p.m. on June 9, 2016 (the 'Departure Date')," but no provision requires the Rileys to end their occupancy or depart by the "Departure Date" or any other date. Similarly, although the Agreement requires the Rileys to

take certain steps (including turning over their keys and removing all trash, pets and personal possessions) "[u]pon vacating the Property," nothing in the Agreement says the Rileys are required to vacate the Property. More importantly for our analysis, the Agreement does not contain any provision giving BONYM or any of its affiliates the right to enter the Property, change the locks, drain the pipes, or the like.

Despite Appellees' argument on appeal that Floyd's counterclaims "revolve around… whether Appellees had the right to enter the Property in and around January 2019 under the terms of the [A]greement," Floyd's live pleading does not allege that his claims are based on any rights or duties under the Agreement. Although the Agreement is mentioned in the factual background regarding intentional infliction of emotional distress through abuse of process and malicious prosecution, the factual nucleus for those claims is that "BONYM intentionally and recklessly chose to harass and cause [Floyd] severe emotional distress for four years with multiple lawsuits or legal actions [culminating] in its 2019 lawsuit to compensate for its and its prior legal counsel['s] failure to timely, adequately and lawfully foreclose." We conclude that although the Agreement plays a role in the long history of this dispute, the pleadings do not indicate it is the factual nucleus of Floyd's claims for intentional infliction of emotional distress.

The Agreement is not mentioned as a factual basis for Floyd's other counterclaims which are based on assertions that Appellees entered the Property and

committed various torts in the process. The answers filed by Appellees in response to Floyd's counterclaims do not assert their actions were authorized by the Agreement. The only answer to mention the Agreement is MCS's and it does so only for the purpose of asserting Floyd's claims are barred by the release contained in the Agreement. But because the issue of whether the release bars Floyd's claims is a question of law (addressed above) rather than fact, MCS's assertion of release based on the Agreement does not inject operative facts which overlap with the operative facts of the federal court case.

Without mentioning the Agreement, CMS's answer pleads justification, asserting it was exercising its own legal rights or acting in a good-faith belief concerning its rights. But when asked in an interrogatory to "[l]ist all documents, used by CMS that granted authorization to enter the property grounds and interior of the [Property] on 1/09/2019 without the property owner[s'] consent," CMS referred the Rileys to the deed of trust, not the Agreement. Unlike the Agreement, the deed of trust provides that upon the Rileys' failure to perform, BONYM has the right to do whatever is reasonable to secure the property, including but not limited to "entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have the utilities turned on or off."

28

It is unclear how Floyd's counterclaims can be said to "revolve around" Appellees' rights under the Agreement at issue in the federal court case when the Agreement does not mention any such rights and when the pleadings do not point to the Agreement either as authorizing or prohibiting Appellees' alleged conduct in January 2019. Conversely, Floyd's live pleading asserts that because BONYM did not supersede the trial court's August 2018 summary judgment wherein the deed of trust was declared void, "BONYM, their loan servicer (CMS), agents or contractors (MCS) unlawfully entered [Floyd's] property and homestead without permission or consent nearly six (6) months after a Court voided BONYM's [deed of trust] lien." Based on the record before us, the counterclaims appear, at least to some extent, to "revolve around" whether Appellees' conduct in January 2019 was authorized by a deed of trust which Floyd claims was void and which was the very basis of BONYM's foreclosure action that was pending in the 136th District Court when and where the counterclaims were filed.

The Fifth Circuit held, and we agree, the state and federal court cases were based on two different transactions, a deed of trust and a settlement agreement. *Bank of N.Y. Mellon*, 2022 U.S. App. LEXIS 15042, at *11 ("[T]wo claims have the same identity only where the same transaction is the source of the claim in both suits."). To the extent Floyd's counterclaims are affected by either transaction, we conclude the nucleus of operative facts upon which the counterclaims are based is more

29

closely aligned with the parties' rights and duties under the deed of trust, which the Fifth Circuit described as the "central transaction" of the state court case, rather than the parties' rights and duties under the Agreement, which was the focus of the federal court case. Because Floyd's claims (other than breach of contract and negligent misrepresentation) are not based on the same nucleus of operative facts as BONYM's federal court claims, they were not compulsory counterclaims in that case and are not barred by res judicata in this case. We sustain Floyd's second issue with respect to all counterclaims other than breach of contract and negligent misrepresentation.

3. *Protective Order*

Finally, the Rileys argue the trial court abused its discretion by granting the Appellees' motion for protection, prohibiting the parties from conducting discovery "until this Court enters a ruling on Plaintiff/Counter-Defendant BONYM and Third-Party Defendants Carrington and MCS's Joint Motion for Summary Judgment." By its own terms, the order's prohibition on discovery has expired because the trial court entered a ruling on Appellees' motion for summary judgment. Therefore, we conclude the Rileys' third issue is moot.

**Conclusion**

Because Floyd's claims for breach of contract and negligent misrepresentation were compulsory counterclaims in the federal court case, we affirm that portion of

the trial court's summary judgment disposing of those claims. Because the remainder of Floyd's claims are not barred either by release or res judicata, we reverse that portion of the trial court's summary judgment which disposes of those counterclaims and third-party claims, and we remand that portion of this case to the trial court for further proceedings. Lastly, we note that although Sonia is a party to this appeal, the rulings she challenges are moot, BONYM's claims against her have been dismissed, and she is not a party to the counterclaims and third-party claims being remanded to the trial court. Therefore, Sonia's appeal is dismissed as moot.

DISMISSED AS MOOT IN PART; AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

KENT CHAMBERS
Justice

Submitted on October 15, 2024
Opinion Delivered March 27, 2025

Before Johnson, Wright and Chambers, JJ.

31